456 A.2d 1047

**COMMONWEALTH of Pennsylvania**

v.

**Ronald Lee WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 20, 1982.

Filed Feb. 18, 1983.

Petition for Allowance of Appeal Denied June 8, 1983.

502

504

Gary L. Snyder, York, for appellant.

Sheryl Ann Dorney, Assistant District Attorney, York, for Commonwealth, appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

CIRILLO, Judge:

This is an appeal from the denial of appellant's petition for relief under the Post Conviction Hearing Act (P.C.H. A.).[1]

On November 21, 1978, appellant Ronald Lee Williams was found guilty of Rape [2] and Involuntary Deviate Sexual Intercourse [3] by the Honorable James E. Buckingham, sitting without a jury. Appellant's post-verdict motions were dismissed on December 27, 1978. New counsel having been appointed, appellant was sentenced on February 16, 1979 to not less than five (5) nor more than ten (10) years imprisonment on each charge, to run consecutively. Appellant's new counsel failed to file a timely appeal to this court and we refused to accept an appeal nunc pro tunc. On March 19, 1980, appellant filed a petition pursuant to the P.C.H.A.

1. Post Conviction Hearing Act, Act of January 25, 1966 P.L. 1580 (1965), § 1 et seq., 19 P.S. § 1180–1 et seq., repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a) (1397) effective June 27, 1980, as amended by Act of June 26, 1980, P.L. 265, No. 77, § 2 delaying repeal until June 27, 1981, as further amended by the Act of June 27, 1981, P.L. 123, No. 41, § 1 delaying repeal until June 26, 1982, repealed by Act of May 13, 1982, P.L. 587, No. 1982–122, § 3, replaced by 42 Pa.C.S. 9541 et seq.

2. Act of December 6, 1972, P.L. 1482, No. 334, section 1, 18 Pa.C.S.A. section 3121.

3. Act of December 6, 1972, P.L. 1482, No. 334, section 1, 18 Pa.C.S.A. 3123.

and new counsel was again appointed. On June 26, 1980 a hearing on appellant's P.C.H.A. petition was held before Judge Buckingham. Appellant was permitted to file supplemental post-verdict motions. Appellant's supplemental post-verdict motions and P.C.H.A. petition were denied in all respects by Judge Buckingham on October 16, 1980 except that appellant was permitted to file an appeal nunc pro tunc with this court from the dismissal of his post-verdict motions. An appeal was filed with this court but quashed on December 23, 1980 because it was not timely filed. Appellant filed a second P.C.H.A. petition on March 23, 1981 alleging ineffective assistance of counsel in failing to file a timely appeal. On April 1, 1981, Judge Buckingham granted the relief requested under this second P.C.H.A. and new counsel was again appointed to effectuate an appeal from the October 16, 1980 order. This appeal followed.

Appellant raises several claims on appeal. Appellant first contends that he was denied his rights under Pa.R.Crim.P. 1100, 42 Pa.C.S.A. The criminal complaint against appellant was filed on April 5, 1978 and the Rule 1100 trial run-date was October 2, 1978. On September 18, 1978, prior to the expiration of the 180th day, the Commonwealth filed an application to extend the time for commencement of trial due to the unavailability of Dr. Lynn Jensen, the physician who examined the victim after the rape.[4] On October 2, 1978 the 180th day passed. On November 2, 1978, a hearing was held on the Commonwealth's application to extend. At the conclusion of that hearing Judge Buckingham granted the Commonwealth's application. Tri-

---

4. The record also indicates that on September 11, 1978, at the request of the Commonwealth and after a hearing, Judge Buckingham continued the case to the term of court commencing November 20, 1978 due to the unavailability of Dr. Jensen. Rule 1100 provides that at any time prior to the expiration of the period for commencement of trial, the Commonwealth may apply to the court for an order extending the time for commencement of trial and that a copy of the application shall be served upon the defendant through his attorney. In the instant case, the Commonwealth properly filed a timely application to extend. The September 11, 1978 continuance is immaterial to our disposition of the Rule 1100 claim and we note it only to provide a full procedural history of the case.

al was scheduled to commence and did commence before Judge Buckingham on November 20, 1978.

Appellant concedes that the unavailability of a Commonwealth witness is a basis for an extension of time for commencement of trial, *Commonwealth v. Sharp*, 287 Pa. Super. 314, 430 A.2d 302 (1981); *Commonwealth v. Brown*, 252 Pa.Super. 365, 381 A.2d 961 (1977), but claims that the Commonwealth failed to exercise due diligence in setting up and disposing of its application for an extention of time for commencement of trial. Appellant argues that the Commonwealth was aware of the unavailability for trial of Dr. Jensen in August 1978 but did not file its application to extend until September 18, 1978. Appellant also argues that while the Commonwealth's application to extend was filed before the 180th day the hearing and ruling on that application did not occur until after the expiration of the 180 day period and there is no reasonable explanation on the record for this delay. Appellant claims that these unexplained delays denied him his rights under Rule 1100. We disagree.

Rule 1100 provides, in pertinent part:

(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

The fact that the Commonwealth did not file its application to extend the time for commencement of trial immediately upon being informed that Dr. Jensen would be unavailable for trial does not afford appellant a basis for discharge under Rule 1100. Rule 1100 sets forth no time

requirement as to the filing of an application to extend other than that it must be filed prior to the expiration of the period for commencement of trial. Rule 1100 specifically provides that the Commonwealth may file its petition to extend "[a]t any time prior to the period for commencement of trial...." In *Commonwealth v. Harrison*, 293 Pa.Super. 211, 438 A.2d 612 (1981) and *Commonwealth v. Schmoyer*, 280 Pa.Super. 406, 421 A.2d 786 (1980), this Court held that a Commonwealth application to extend which was filed on the last day prior to the expiration of the period for commencement of trial was timely. In the instant case the Commonwealth's application to extend was filed two weeks prior to the expiration of the period for commencement of trial. Thus appellant was not denied his rights under Rule 1100 by the filing of the Commonwealth's application to extend in this case.

■ Nor does an unexplained delay in holding a hearing and ruling on a timely filed application to extend the time for commencement of trial necessarily warrant discharge under Rule 1100 absent some prejudice resulting from the delay. *Commonwealth v. Fairley*, 298 Pa.Super. 236, 444 A.2d 748 (1982). Our Court has recognized that ruling on a timely filed application to extend the time for commencement of trial may occur after the run-date. *Id.* It is only when some prejudice is alleged to have resulted to the defendant from the delay that we must inquire into the reasons for the delay. *Id.* In *Fairley*, 298 Pa.Super. at 241–42, 444 A.2d at 751, we said:

> To begin with, the rule does not delimit a time period in which the petition must be acted upon by the court. However, we have examined speedy trial claims under Rule 1100 where the court delayed a hearing until after the period had run and commented that "[W]e can ... imagine situations in which prejudice to the defendant would result from such a practice." *Commonwealth v. Metzger*, 249 Pa.Super. [107] at 110 n. 2, 375 A.2d [781] at 783 n. 2. Thus, in order to prevent the risk of prejudice,

" 'the lower court should make every effort to dispose of the Commonwealth's petition prior to the expiration of the prescribed period. Any delay past this period must be limited and will possibly be subject to explanation. Such procedure is mandated by the necessity that all concerned be aware of the status of the case. To require otherwise is unfair to the court, the accused, and the people.' " *Commonwealth v. Simon*, 283 Pa. Super. 203, 206, 423 A.2d 1060, 1061 (1981) (*quoting Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1976)).

While the record in the instant case does not disclose why the Commonwealth's petition was scheduled to be heard seven weeks after the run date, appellant does not allege, nor does the record reveal that he was prejudiced by the court's action. Therefore, under these circumstances, this Court need not inquire further into the reasons for the delay.

■ As in *Fairley*, while the record in the instant case does not disclose why the hearing on the Commonwealth's application to extend was held after the run-date, appellant does not allege any prejudice, nor does the record reveal any prejudice to appellant as a result of this delay. Thus since appellant has suffered no prejudice from the unexplained delay in hearing and ruling on the Commonwealth's timely filed application to extend the time for commencement of trial he has not been denied his rights under Rule 1100 in this regard.

■ Secondly, appellant claims for a variety of reasons that his waiver of a jury trial was not knowing and intelligent. To be valid, the waiver of the right to trial by jury must be an intentional relinquishment or abandonment of a known right or privilege; it must be a knowing, intelligent and understanding waiver of a known right. *Commonwealth v. Garrett*, 439 Pa. 58, 266 A.2d 82 (1970). Appellant first attacks the legal sufficiency of the waiver colloquy by claiming that he was not advised of the "beyond a reasonable doubt" standard of proof. Appellant's claim,

however, is belied by the record. The Notes of Testimony of the waiver colloquy reveal that after explaining to appellant the elements of the crimes with which he was charged the following exchange occurred:

THE COURT: This is what the Commonwealth has the burden of proving beyond a reasonable doubt either to the jury or to the court sitting alone. Do you have any questions about that?

THE DEFENDANT: No, sir.

Thus the record establishes that the appellant was informed of the "beyond a reasonable doubt" standard of proof and no further explanation was necessary. *Commonwealth v. Pollard*, 288 Pa.Super. 20, 430 A.2d 1192 (1981).

Appellant also claims that his limited educational background, and his prior placement in a mental health center for observation combined with certain incongruous answers and bizarre statements by appellant during the waiver colloquy demonstrate that his waiver was not knowing and intelligent. We disagree. The relevant portion of the colloquy is as follows:

Q. Do you have any history of any mental instability, or anything like that? Have you ever been a patient in a mental health center or a mental hospital?

A. Yeah, just—I was just sent up for observation; that's all.

Q. But you've never been a patient? Have you ever been a patient of a psychiatrist or mental doctor, or anything like that?

A. (No response.)

MR. MORAN: Were you in for observation, and then released?

THE DEFENDANT: Yeah.

MR. MORAN: Your Honor, he was in for observation, and then released.

THE COURT: Then released?

MR. MORAN: Yes, sir.

(By the Court:)

Q. So you were never a patient?

A. (No response.)

MR. MORAN: You were never a permanent patient?

(The defendant did not respond.)

(By the Court:)

Q. You were never in a mental hospital or a mental health center?

A. No, sir.

Q. You were never a patient of a mental health doctor or a psychiatrist of a psychologist, as I understand it; is that correct?

A. Yes, sir.

Q. Now, are you quite certain that this is what you want to do, Mr. Williams?

A. Yes, sir.

Q. You realize that you're giving up very valuable rights by waiving your right to a jury trial; there's no question about that, you fully understand that?

A. Yes, sir.

Q. And are you certain you want to do that?

A. Yes, sir.

THE COURT: Do either counsel want to ask any questions?

MR. MORAN: Your Honor, I believe the defendant has a question.

THE COURT: Yes.

THE DEFENDANT: I just wanted to say this: regardless of whoever makes the decision, the devil's decision is the devil's decision, the lord's is the lord's. That's what I want to say.

THE COURT: I couldn't quite understand you.

THE DEFENDANT: Whatever decision the lord makes is made, whatever decision the devil makes is made; so I got nothing further to say.

THE COURT: I don't know how that affects this. You've got to understand that the decision in the case, if you're tried by a jury, is made by the jury; if you're tried by a judge, the judge makes the decision, whether you're guilty or innocent; not the lord, or anybody else. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything that you don't understand, that was said here today by anybody?

THE DEFENDANT: I fully understand everything.

■ Appellant asserts that when first asked if he had ever been a patient in a mental health center he answered that he had been in for observation, but when later asked if he had ever been in a mental health center he replied "no". Appellant argues that these answers demonstrate confusion on his part. We disagree. These answers are not inconsistent and do not demonstrate confusion. We agree with the P.C.H.A. Court that the colloquy clearly shows that what appellant meant by these answers was that he had not been in a mental health center as a patient but only for observation.

Furthermore, if there was any confusion on appellant's part, that confusion did not relate to his understanding of his right to a jury trial, the essential elements of a jury trial, or his decision to waive a jury trial. Contra: *Commonwealth v. Hooks*, 450 Pa. 562, 301 A.2d 827 (1973); *Commonwealth v. Stokes*, 450 Pa. 167, 299 A.2d 272 (1973).

■ In *Commonwealth v. Hooks, supra,* Hooks stated during the jury trial waiver colloquy, "I don't really understand some of the things. Some of the things are still not clear to me." Our Supreme Court held in *Hooks* that since it was not ascertainable from the record of the colloquy in that case whether the "unclear things" in that case involved his right to a jury trial or something else, the intelligence of the waiver was left in doubt. In *Commonwealth v. Stokes, supra,* Stokes, who was 20 years old and educated only to the 7th grade in a school for slow learners, vacillated in his

decision between jury trial and non-jury trial. Our Supreme Court held in *Stokes* that the record indicated confusion and vacillation on Stokes' part and was therefore inadequate to support a finding of a knowing and intelligent waiver. In the instant case however, the alleged confusion, if any, does not relate to the right to a jury trial, the essential elements of a jury trial, nor the decision to waive jury trial. Nor is there any vacillation on appellant's part as to his decision to waive jury trial. Thus, these answers do not evidence confusion such as would render appellant's waiver not knowing and intelligent.

■ Likewise, the appellant's statements about the "devil's decision" and the "lord's decision" do not support a finding that his waiver was not knowing and intelligent. While in isolation these statements may appear bizarre, the record as a whole demonstrates that appellant's waiver was knowingly and intelligently made. Immediately after these statements, the Trial Court informed appellant that the decision in this case would be made either by a jury or a judge and appellant replied that he understood.

■ Nor can we say that appellant's educational background and the fact that he had been in a mental health center for observation necessitates a conclusion that his waiver was not knowing and intelligent. While appellant had only an 8th grade education, he spent two years in the Job Corps and while he had been in a mental health center it had been only for observation and he was then released. We have reviewed the colloquy and find it supports the P.C.H.A. Court's determination that the appellant knowingly and intelligently waived his right to a jury trial.

■ Appellant also contends that his trial counsel discouraged him from a jury trial by over-emphasizing the possible prejudice of a white jury against appellant, who is black, accused of raping a 14 year old white child. Appellant further asserts that his trial counsel recommended that he waive his right to jury trial. Thus, appellant argues that his counsel contributed to his inability to make a knowing

and intelligent waiver of his right to jury trial. We disagree. Trial counsel testified at the P.C.H.A. hearing that while he did advise appellant of the potential prejudice involved in a case of this type he said he specifically advised appellant against a non-jury trial. Trial counsel further testified that it was appellant who wanted a non-jury trial. The P.C.H.A. court resolved this issue of credibility against appellant and there being support for such a determination in the P.C.H.A. record we will not disturb it on appeal. *Commonwealth v. Stokes,* 294 Pa.Super. 529, 440 A.2d 591 (1982). The decision to waive a jury trial is ultimately and solely that of the defendant. *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975); *Commonwealth v. Stokes,* 450 Pa. 167, 299 A.2d 272 (1973). The record in this case demonstrates that appellant himself freely made that decision in this case.[5]

Appellant next challenges the effectiveness of his trial counsel. The standard of review for questions regarding the effectiveness of counsel was set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599 at 604–05, 235 A.2d 349 at 352–53 (1967) as follows:

Our task in cases of this nature therefore encompasses both an independent review of the record, *see Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225

---

**5.** Appellant also recasts as a claim of ineffectiveness of counsel this claim that his trial counsel over-emphasized the potential racial prejudice of a jury in a case of this type and recommended appellant waive his right to jury trial. Appellant's claim is no more compelling as a claim of ineffectiveness of counsel. In *Commonwealth v. Boyd,* 461 Pa. at 30, 334 A.2d at 617 our Supreme Court said,

Counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance of counsel only when 1) counsel interferes with his client's freedom to decide to waive a jury trial, cf. *Commonwealth v. Stokes, supra,* or 2) appellant can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right. Where an appellant merely claims, as in the present case, that his decision was a strategic error, and can point to no specific incidents of counsel impropriety, he must bear the responsibility for that decision and cannot shift the blame to counsel.

For the same reasons as stated above, appellant has failed to establish either of the factors set forth in *Boyd* and thus counsel cannot be found ineffective.

A.2d 236 (1967), and an examination of counsel's steward-
ship of the now challenged proceedings in light of the
available alternatives....

We cannot emphasize strongly enough, however, that our
inquiry ceases and counsel's assistance is deemed consti-
tutionally effective once we are able to conclude that the
particular course chosen by counsel had *some reasonable
basis* designed to effectuate his client's interests. The
test in *not* whether other alternatives were more reasona-
ble, employing a hindsight evaluation of the record. Al-
though weigh the alternatives we must, the balance tips
in favor of a finding of effective assistance as soon as it
is determined that trial counsel's decisions had any rea-
sonable basis. (footnote omitted) (emphasis in original)

 Appellant contends that his trial counsel failed to
spend adequate time in preparing the case. Specifically
appellant contends that trial counsel visited him only once
while he was in prison and spoke to him only briefly at the
preliminary hearing and arraignment. Appellant argues
that his lack of contact disenabled trial counsel from proper-
ly preparing a defense. However, mere shortness of time
spent in conference with a client does not per se establish
ineffectiveness of counsel. *Commonwealth v. Owens*, 454
Pa. 268, 312 A.2d 378 (1973); *Commonwealth v. Jones*, 298
Pa.Super. 199, 444 A.2d 729 (1982). Furthermore, the time
actually spent by counsel with an accused is not necessarily
related to, and affords no basis for inferring the extent of
total trial preparation. *Commonwealth v. Owens, supra.*
We have conducted an independent review of the record and
find no evidence of inadequate preparation on the part of
appellant's trial counsel.

 Finally, appellant contends that trial counsel failed
to adequately prepare his alibi defense. Specifically appel-
lant contends that trial counsel failed to adequately investi-
gate and take measures necessary to ensure the presence of
the alibi witnesses at trial. In *Commonwealth v. Owens*,
454 Pa. at 272, 312 A.2d at 381 our Supreme Court said,

[H]ad appellant clearly established that he had commu-
nicated to his attorney the existence of the two witnesses

516

and his attorney, without investigation, had failed to call them as witnesses, then such conduct, if not explained, would be a relevant circumstance in determining whether appellant was denied effective assistance of counsel. However the record in the instant case fails to establish any lack of diligence in this regard on the part of trial counsel. Trial counsel testified at the P.C.H.A. hearing that appellant informed him of the alleged alibi witness only shortly before trial, either on the day before trial or the day of trial. Trial counsel further testified that this information consisted only of nicknames and no addresses were given. Immediately upon receiving this information from appellant, trial counsel went to the Sheriff's office and attempted to have these witnesses subpoenaed. One witness who could be found and served, testified at trial. When those who could not be found and served, failed to appear at trial, counsel requested, but was denied, a continuance. Furthermore, appellant testified at the P.C.H.A. hearing that he did not then, nor did he ever know the full names of the persons appellant wanted called as witnesses. Thus the record in this case fails to establish any lack of diligence on the part of trial counsel in the investigation, preparation or presentation of appellant's alibi defense.

Judgment of sentence affirmed.