482 A.2d 573

**COMMONWEALTH of Pennsylvania**

**v.**

**Darryl JORDEN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1984.

Filed Sept. 21, 1984.

---

John P. Cotter, Philadelphia, for appellant.

Leslie Ann Sudock, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WICKERSHAM, MONTEMURO and MONTGOM-
ERY, JJ.

MONTEMURO, Judge:

This is an appeal from judgment of sentence. On Octo-
ber 29, 1981, following a trial before the Honorable John J.
Chiovero and a jury, the appellant, Darryl Jorden, was
found guilty of rape,[1] criminal conspiracy,[2] and possessing
instruments of crime.[3] The appellant's post-verdict motions
for a new trial and in arrest of judgment were filed, briefed,
and argued, but denied by the court. On May 10, 1982, the
appellant was sentenced to five (5) to ten (10) years impris-
onment on the conspiracy charge, two and one-half (2½) to
five (5) years imprisonment on the weapons charge, and
seven and one-half (7½) to fifteen (15) years imprisonment
on the rape charge. A motion to modify sentence was
subsequently filed; but also denied.

The appellant asserts five instances of error by the trial
court. We have carefully reviewed the appellant's argu-
ments in conjunction with the entire certified record and the
relevant law, and conclude that his arguments are without
merit.

The instant charges arose out of an incident on July 1,
1980, the facts of which are clearly set forth in the Opinion
of Judge Chiovero, filed pursuant to Pa.R.A.P.1925.

On July 1, 1980 the Complainant, Kelly Mock, and
several friends were at 2539 North 29th Street in Phila-
delphia. The Defendant, Darryl [sic] Jorden, and Co-Con-
spirator, Duwayne Johnson, were admitted to said premis-
es by one of the guests. While Duwayne Johnson was
arguing with one of the guests, the Defendant seized the
Complainant at knife point and stated, "We can do this
the easy way or the hard say." The Defendant then cut

1. 18 Pa.C.S. 3121

2. 18 Pa.C.S. 903

3. 18 Pa.C.S. 907

the Complainant's hair with the knife stating, "This is the hard way."

The Defendant and Duwayne Johnson held the Complainant's arms and forced her into the kitchen. At this point the Defendant was holding a hammer and Duwayne Johnson was in possession of a knife. Duwayne Johnson left the Defendant and the Complainant alone in the kitchen. The Defendant knocked the Complainant on the floor and removed her pants. He then forced her to have sexual intercourse with him during which time the Complainant protested. Shortly after, Duwayne Johnson returned to the kitchen and also forced the Complainant to have sexual intercourse with him.

During this time, one of the guests waived down Police Officer Foster Morgan who was driving a marked police car in the 2500 block of North 29th Street. Shortly thereafter the Defendant and Duwayne Johnson were apprehended by the Philadelphia Police. (Footnotes omitted).

Lower Court Opinion, at 2.

The appellant initially argues that the trial court erred in denying his petition to dismiss pursuant to Pa.R.Crim.P. 1100. The relevant facts are as follows: A criminal complaint was filed on July 2, 1980; thus the mechanical run date for Rule 1100 purposes was December 29, 1980. On November 13, 1980, the appellant signed a waiver of his Rule 1100 rights until January 30, 1981. On January 28, 1981, the Commonwealth filed a petition to extend the run date; however, on the next day, the appellant signed a second waiver of his Rule 1100 rights until April 17, 1981. Trial was scheduled for April 13, 1981.

On April 13, 1981, a hearing was held on appellant's pretrial motions. A motion to suppress physical evidence and the statement of co-defendant, Duwayne Johnson, was denied. A motion to sever appellant's trial from that of co-defendant was granted. On April 15, 1981, the appellant

again signed a waiver of his Rule 1100 rights until July 15, 1981. Trial was scheduled for June 22, 1981.[4]

On June 22, 1981, the case was called to trial; however, the appellant, who had been free on bail, failed to appear. Judge Chiovero, presiding over the trial (as well as Johnson's), issued a bench warrant, subject to the instruction: "Hold, bring before Judge Chiovero only$"

On July 13, 1981, the Commonwealth filed a petition to extend the run date, citing the appellant's default in appearance and alleging that they would not be able to bring the appellant to trial before July 15, 1981, despite due diligence.

On August 6, 1981, the appellant was captured. At that time, Judge Chiovero was away on vacation. On September 10, 1981, shortly after Judge Chiovero's return, a hearing was held on the bench warrant and bail was revoked. Judge Chiovero also scheduled a hearing on the Commonwealth's petition to extend on September 21, 1981. Due to defense counsel's unavailability, the hearing was not held until September 22, 1981. Following the hearing, the court directed both parties to submit memoranda on the Rule 1100 issues. The appellant then executed a waiver of his Rule 1100 rights until November 16, 1981, reserving any objection he had to violation of Rule 1100 occurring in the period between August 7 and September 22. The case was listed for trial on October 16, 1981.

On September 30, 1981, the appellant filed a motion to dismiss under Rule 1100(f). On October 16, 1981, the court heard argument on both the Commonwealth's petition to extend and the appellant's petition to dismiss. At the conclusion of argument, the court granted the petition of the Commonwealth and extended the run date to December 15, 1981; the appellant's petition was denied. Trial commenced on October 21, 1981.

The appellant now contends that the trial court's disposition of the Rule 1100 issue was erroneous because the

4. On April 24, 1981, appellant's co-conspirator, Duwayne Johnson, was found guilty of rape in a trial before Judge Chiovero and a jury.

Commonwealth did not exercise due diligence in scheduling a hearing on its petition to extend prior to the Rule 1100 run date. The appellant's argument is premised on *Commonwealth v. Simon*, 283 Pa.Super. 203, 423 A.2d 1060 (1981). In *Simon*, the court found that a defendant's speedy trial right had been violated where the Commonwealth failed to explain why there was not a timely hearing on its petition to extend. *See also, Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1976).

■ We conclude that the appellant's argument is without merit. First, we find *Simon* is inapposite because the Commonwealth set forth the reasons why there was a delay; i.e., the appellant's failure to appear and the trial judge's vacation. Second, we note that in *Commonwealth v. Williams*, 310 Pa.Super. 501, 456 A.2d 1047 (1983), this court held:

Nor does an unexplained delay in holding a hearing and ruling on a timely filed application to extend the time for commencement of trial necessarily warrant discharge under Rule 1100 absent some prejudice resulting from the delay. *Commonwealth v. Fairley*, 298 Pa.Super. 236, 444 A.2d 748 (1982). Our Court has recognized that ruling on a timely filed application to extend the time for commencement of trial may occur after the run-date. *Id.* It is only when some prejudice is alleged to have resulted to the defendant from the delay that we must inquire into the reasons for the delay. *Id.*

*Id.*, 310 Pa.Superior Ct. at 508, 456 A.2d at 1051. Herein, appellant has alleged no prejudice. Consequently, we need not consider this issue further.

■ Appellant, alternatively, argues that the trial court erred in granting the Commonwealth's petition to extend because it was facially defective in that it requested an extension of sixty days without averring facts to support that such a motion was necessary. This argument misconstrues Rule 1100. The Commonwealth's petition need not set forth any specific amount of time requested for an extension, as can be deduced from reading Pa.R.Crim.P.

1100(c)(3). Rather it is the trial court's order granting a motion for extension which "shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate." Pa.R.Crim.P. 1100(c)(4). Thus appellant's contention is patently meritless.

The appellant's second contention is that the trial court erred in denying defense counsel's motion for mistrial raised during the jury deliberations. The factual context of the motion is as follows: On October 28, 1981, at 11:20 A.M., the trial court completed its charge and the jury retired for deliberations. At 2:05 P.M., the jury requested a clarification with respect to the court's charge on carrying a concealed weapon. At 2:14 P.M., the jury was brought into the courtroom and a clarifying instruction was given. At 2:20 P.M., the jury retired for further deliberations.

At 4:25 P.M., the judge read to counsel a note which was received from the foreperson of the jury. The note read: "Your Honor, we have reached an impasse at 11 to 1. What is your desire?" Defense counsel requested a mistrial. The trial judge refused the mistrial, and dismissed the jury for the day, instructing the jurors to return at 9:30 A.M., the next day.

On October 29, 1981, at 10:11 A.M., the jury was reconvened in the courtroom and the trial judge stated:

THE COURT: I have before me the note which you submitted to the court crier yesterday. I will read it into the record, and I quote: "Your Honor, we have reached an impasse at 11 to 1. What is your desire?"

Well, my desire is that you return to deliberate upon your verdict with a view toward reaching a unanimous agreement if it can be done without violence to your individual judgment. And I instruct you further that in order to return a verdict, each juror must agree thereto. Jurors have a duty to consult with one another and to deliberate, as I said, with a view of reaching an agree-

ment if it can be done without violence to individual judgment.

Each juror must decide the case for himself but only after an impartial consideration of the evidence with his fellow jurors. In the course of deliberations a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous. No juror should surrender honest convictions as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

In addition, I would advise you that it is not necessary that you advise the Court of the numerical breakdown should you reach an impasse again. Do you understand? All right. I appreciate your cooperation, and I ask you to please return to the jury room and continue your deliberations.

(N.T. October 29, 1981, at 692–93). The jury then retired for further deliberation.

At 2:20 P.M. of the same day, the trial judge informed counsel of a note which had been received from the jury at 1:15 P.M., which stated, "Your Honor, we are hopelessly deadlocked." Defense counsel again moved for a mistrial. The court heard both counsels' argument on the question of mistrial. At 3:05 P.M., the jury was brought into the courtroom, and instructed by the judge:

THE COURT: I wish to thank you for your diligence and your conscientious efforts in connection with this matter. I am in receipt of your note signed by your foreperson, and I quote again for all of you: "Your Honor, we are hopelessly deadlocked."

The trial of this case or during the course of the trial of this case you heard testimony for approximately four days from numerous witnesses and a considerable amount of evidence was presented. It is my view that, perhaps, further deliberations may be in order. Of course, I could be mistaken in that regard. I would like, with your permission, to read to you once again the

responsibilities that the jurors have to each other and ask you to deliberate further. I do not wish to compel you to reach a verdict or force you in that regard, but I do want to afford you additional time, since you have been in deliberations only about eight hours, and I think that, perhaps, you should be afforded some additional time.

Consequently, I am going to read to you once again that, number one, in order to return a verdict each juror must agree thereto, and I know you are aware of that. Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment.

Each juror must decide the case for himself but only after an impartial consideration of the evidence with his fellow jurors. In the course of deliberation a juror should not hesitate to reexamine his or her views and change his or her opinion if convinced it is erroneous. No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

Now, with that I am going to ask you again to return and deliberate further, and I will be here in court together with the other attorneys. If there are any further communications which you care to make with the Court, you may do so through the court officer who will be in attendance. Thank you.

(N.T. October 29, 1981 at 712–13). At 3:12 P.M., the jury again retired for deliberations until 3:34 P.M. when a verdict of guilty on all charges was returned.

The appellant's claim of error is based on two grounds: (1) that it was error to deny a mistrial when the jury communicates that it is "hopelessly deadlocked" and such communication occurs approximately twenty-three hours after the court is first informed that the jury is at an impasse; and (2) that the trial court erred in not polling the jury as to whether further deliberations would be fruitful.

■ Initially, we note that a motion for mistrial is directed to the discretion of the court and this court will not reverse a trial court's decision absent flagrant abuse of discretion. *Commonwealth v. Green*, 287 Pa.Super. 220, 429 A.2d 1180 (1981); *Commonwealth v. Stokes*, 279 Pa.Super. 361, 421 A.2d 240 (1980). In *Commonwealth v. Fields*, 317 Pa.Super. 387, 464 A.2d 375 (1983), the court reiterated the standard set forth in *Commonwealth v. Farrell*, 265 Pa.Super. 41, 52–53, 401 A.2d 790, 796 (1979) (*quoting, Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957)):

> "In determining whether to grant the request, the necessary inquiry is whether the alleged occurrence was prejudicial to the defendant, 'that is, [whether] it is of such a nature ... that it may reasonably be said to have deprived the defendant of a fair and impartial trial."

*Id.*, 317 Pa.Super. at 400, 464 A.2d at 382.

With respect to the appellant's first contention, the question before us is whether the charge given by the trial judge coerced the jury into reaching a verdict. In *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), the supreme court rejected the use in this Commonwealth of the charge set forth in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).[5] The court stated "a conviction will be reversed if the jury's verdict was effectively coerced by the trial judge's charge." *Commonwealth v. Spencer, supra*, 442 Pa. at 335, 275 A.2d at 303. The court further recommended that trial courts consult the ABA Project on Minimum Standards for Criminal Justice, Trial by Jury § 5.4 (Approval Draft 1968), as a guideline to follow when juries are deadlocked.

■ The appellant does not contest the content of the charges given by the trial court. Indeed, such a contention would be meritless because examination of both charges

---

5. We do not mean to imply that the charge given by the trial judge herein was the same as or similar to an *Allen* charge. For the content of an *Allen* charge, *see Commonwealth v. Spencer*, 442 Pa. at 334 n. 4, 275 A.2d at 302 n. 4.

demonstrates that they compare favorable with the standards recommended by the supreme court in *Spencer*. Rather, he contends that it was error for the court to charge the jury a second time after it indicated that it was "hopelessly deadlocked" and such communication occurred twenty-three hours after it indicated it was at an "impasse." The black picture painted by appellant does not reflect what actually occurred. In reality, the jury had only deliberated for a total of approximately eight hours, when it sent the note to the judge saying the jurors were deadlocked. The trial judge believed that this was not an inordinately long time to deliberate in a case which was tried for four days. Moreover, we find no abuse of discretion in instructing the jury as to their duties a second time inasmuch as this procedure is specifically outlined in the ABA standards advocated by the supreme court. *Id.* § 5.4(b). Consequently, we find no error in the court's denial of the motion for mistrial. *Cf. Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154, *cert. denied, Penn v. Pennsylvania*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Porter*, 300 Pa.Super. 260, 446 A.2d 605 (1982).[6]

■ The appellant's third allegation of error is that the trial court erred in allowing Philadelphia Police Detective Stephen Chopko to testify that the complainant was "crying, sobbing and trembling" four hours after the rape. The appellant contends that the testimony was improper because it was irrelevant, prejudicial and hearsay. We note that the hearsay ground was never raised at trial and is thus waived. With respect to appellant's contention that the evidence was irrelevant and prejudicial, we disagree.

On direct examination, the complainant told her version of the rape. On cross-examination, defense counsel pointed out inconsistencies between her testimony and a summary of her statement on the night of the rape which was

6. The appellant's alternative argument—that the court should have polled the jury to determine if further deliberations would be fruitful—is equally without merit. *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979).

included in the police "49" report. The complainant testified that her statement on the night of the rape was inaccurate because she was upset because of the rape.

We conclude that because defense counsel attempted to impeach her and put her veracity in issue, the Commonwealth was entitled to introduce evidence for the purpose of corroborating complainant's explanation that she was upset at the time she gave her original statement to the police. Detective Chopko's testimony concerning his observation of her physical condition around the time she gave her statement to the police is relevant and probative as explaining inaccuracies or omissions in that statement. Moreover, such relevance and probative value outweighs any prejudice to the appellant.

The appellant's fourth argument is that the trial court erred, and thereby prejudiced the appellant, by reversing itself on an evidentiary ruling at trial, after the appellant took the stand to testify. The facts are as follows:

In its case-in-chief, the Commonwealth sought to introduce evidence, by way of the testimony of a court clerk, that the appellant had failed to appear at a previous trial listing and that a bench warrant had been issued. The evidence was proffered as evidence of flight indicative of a guilty mind. Defense counsel objected stating that the evidence was irrelevant and prejudicial. Counsel also stated that, although at the time he was not going to put the appellant on the stand to testify, if the evidence of flight was allowed, the appellant would be virtually compelled to testify to explain his failure to appear.

Although the trial judge was inclined to agree with the position of the prosecutor, he sustained counsel's objection "in an effort to be ultra fair to the defendant." (N.T. October 26, 1981, at 405). The Commonwealth thereafter rested.

The next day, October 27, 1981, the appellant testified in his own defense as to his version of the criminal incident. On cross-examination, the prosecutor began to probe into

appellant's failure to appear at the prior trial listing. Defense counsel quickly interposed an objection and at sidebar stated that his objection was based on the court's ruling the day before, and that counsel would have never let appellant testify if counsel believed that ruling court be reversed. The objection was overruled and the previously inadmissible testimony was allowed.

The appellant now asserts, in effect, that the trial judge should be estopped from changing his evidentiary ruling; stating: "General principles of due process required that the court not reverse a ruling which the defendant relied upon [sic]." We disagree. Although appellant may have indeed relied on the initial ruling, this reliance was not warranted, reasonable or justified.

Initially, we note that evidence of flight is admissible as indicative of a defendant's consciousness of guilt. *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *Commonwealth v. Smith*, 250 Pa.Super. 460, 378 A.2d 1239 (1977). The trial judge, in making his initial ruling was aware of this, as indicated by his agreement with the prosecutor's position. The evidence was, nevertheless, excluded as noted in the lower court opinion at 7, because of counsel's assertion that the appellant would be virtually compelled to testify in response to the evidence. When the appellant chose to testify anyway, the only remaining reason for not permitting the testimony was removed.

A criminal defendant must be aware that when he takes the stand, he will subject himself to cross-examination. As stated by the court in *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied, Camm v. Pennsylvania*, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972):

A defendant cannot protect himself against wide-ranging cross-examination merely by announcing that he is taking the stand solely to refute the voluntariness of his confession. On the contrary, he subjects himself to good-faith cross-examination and the discretionary rulings of the trial judge as to the permissible scope of that cross-

examination. In deciding to take the stand, the defendant must weigh the risks of so doing against the risks of not doing so. Since, in the case before us, there was no advance ruling by the court on the consequences of appellant taking the stand and there was no agreement by the district attorney not to cross-examine, we find no prejudice of which appellant can now complain.

*Id.* 443 Pa. at 265–266, 277 A.2d at 331.

In addition to the fact that the evidence was admissible in both the Commonwealth's case-in-chief, and on cross-examination of the appellant, and that a criminal defendant is subject to wide-ranging cross examination, we note that the determination of admissibility of a particular item of evidence at trial is a dynamic, not a static determination.

■■ Evidence which is originally determined to be inadmissible may later be admitted when additional foundation is laid, when additional facts are adduced which establish relevancy, or if the evidence is offered for a different purpose. *See* Wigmore *Evidence* §§ 18–19 (Chad.Rev. 1970). Consequently, we hold that counsel was not justified in relying on the original ruling on the admissibility of the proffered evidence.

■■■ The appellant's final argument is that the sentence of the trial court was excessive because it was greater than the sentence imposed on appellant's co-conspirator.[7] The imposition of sentence is a matter vested in the sound discretion of the sentencing judge. *Commonwealth v. Galloway,* 302 Pa.Super. 145, 448 A.2d 568 (1982); *Commonwealth v. Bryner,* 285 Pa.Super. 305, 427 A.2d 236 (1981). We find no abuse of discretion.

Judgment of Sentence Affirmed.

7. The appellant's claim is that the sentence is excessive, not that the sentencing judge failed to state on the record the reason for the disparate sentences. *Cf. Commonwealth v. Velez,* 329 Pa.Super. 15, 477 A.2d 879 (1984).