J-S75022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY D. BAKER | |
| Appellant | No. 764 EDA 2015 |

Appeal from the Judgment of Sentence March 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003700-2013

BEFORE:  BOWES, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    **FILED OCTOBER 12, 2016**

Anthony Baker appeals from the March 6, 2014 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his jury trial convictions for first-degree murder, firearms not to be carried without a license, and possession of an instrument of crime.[1]  We affirm.

On February 9, 2012, Baker was involved in an altercation near the intersection of Hansberry and Marion Streets in Philadelphia.  N.T., 2/25/14, at 60-62.  The altercation began as an argument between the victim and a group of other males, including Baker.  *Id.*  The argument quickly turned physical, and a fistfight broke out between the victim and another male,

_____

[1] 18 Pa.C.S. § 2502(a)-(c), 6016(a)(1), and 907(a), respectively.

Steve Dickey, in the middle of Marion Street.[2] *Id.* at 64. Baker and other males watched the fight and encouraged Dickey. *Id.* 65-66. The fighters then crashed through a side door into a residence where the victim's girlfriend lived. *Id.* at 64-65.

After breaking the door, Dickey got up and left the residence, rejoining the other males. *Id.* at 70. The victim got up from the floor and walked back outside, following Dickey and the other males. *Id.* at 71. Once outside, the victim took off his shirt and stood in the middle of Marion Street, yelling for the men to come back and fight him individually. *Id.* at 71, 75. Several of the men, including Baker, then surrounded the victim. *Id.* at 170-71. Baker pulled out a firearm and began to shoot at the victim. N.T., 2/26/14, at 89, 118-19. The victim ran down Marion Street toward Queens Lane while Baker continued to fire at him. N.T., 2/25/14, at 74-77. When a police officer arrived at the scene, he found the victim lying unresponsive in the street between two parked cars. N.T., 2/26/14, at 25-26. Paramedics pronounced the victim dead at the scene of the shooting. N.T., 2/25/14, at 150.

On March 6, 2014, a jury found Baker guilty of first-degree murder, firearms not to be carried without a license, and possession of an instrument of crime. N.T., 3/6/14, at 11-12.

---

[2] An unidentified third person joined in the fight and assisted the other male in assaulting the victim. N.T., 2/25/14, at 69-70.

On March 6, 2014, the trial court sentenced Baker to the following concurrent terms of incarceration: Imprisonment without the possibility of parole for the first-degree murder conviction; 3½ to 7 years' incarceration for the firearms not to be carried without a license conviction; and 2½ to 5 years' incarceration for the possessing an instrument of crime conviction. On May 30, 2014, Baker filed a petition pursuant to the Post Conviction Relief Act.[3] The trial court granted the petition on March 10, 2015, reinstating Baker's direct appeal rights *nunc pro tunc*. Baker filed a timely notice of appeal on March 11, 2015. Both Baker and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Baker raises the following issues on appeal:

(1)  Whether the [t]rial court abuse[d] its discretion and unfairly prejudice[d] [Baker] when the [trial c]ourt denied a [m]otion for [m]istrial after, on three (3) separate occasions, the jury informed the [trial c]ourt that the jurors were deadlocked and could not arrive at a unanimous verdict.

(2)  Whether the [t]rial court abuse[d] its discretion and unfairly prejudice[d] [Baker] when the [trial c]ourt denied a motion for a mistrial after, in front of the jury, the prosecutor shouted and requested that the [t]rial [c]ourt admonish a witness.

Appellant's Br. at 4.

The decision to grant a mistrial is a matter solely within the discretion of the trial court and is reversible only where the trial court abused its

---

[3] 42 Pa.C.S. §§ 9541-9546.

discretion. ***Commonwealth v. Savage***, 602 A.2d 309, 312 (Pa. 1992). This Court has articulated the standard of review when an appellant is alleging that a mistrial was improperly denied:

> [T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

***Commonwealth v. Ragland***, 991 A.2d 336, 340 (Pa.Super. 2010) (quoting ***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa.Super. 2009)). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

Baker's first claim challenges the trial court's denial of two motions for a mistrial, for which Baker moved when the jury indicated for the second and third time that it had reached an impasse in deliberations. Decisions regarding the proper duration of jury deliberations rest "within the sound discretion of the trial court, whose decision will not be disturbed unless there is a showing that the court abused its discretion or that the jury's verdict was the product of coercion or fatigue." ***Commonwealth v. Greer***, 951 A.2d 346, 354 (Pa. 2008) (citation and internal quotation marks omitted).

"Relevant factors in this assessment include the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings, and indications from the jury on the possibility of reaching a verdict." *Commonwealth v. Moore*, 937 A.2d 1062, 1077 (Pa. 2007) (citation omitted).

Baker's trial lasted five days, during which the parties presented four days of testimony from 16 witnesses. Trial Court 1925(a) Opinion, filed 10/30/15, at 9 ("1925(a) Op."). On February 28, 2014, the trial court charged the jury and allowed it to commence deliberations at approximately 4:30 p.m. N.T., 2/28/14, at 140-43. Shortly thereafter, the trial court excused the jury for the weekend and instructed it to resume deliberations on Monday, March 4, 2014. *Id.* at 156-57. On March 4, 2014, at 3:52 p.m., the jury sent a note to the trial court, stating that it was "at an impasse" and "fel[t that] this matter will not be resolved." Jury Note, 3/4/14. The trial court allowed both defense counsel and the Commonwealth to review the note. N.T., 3/4/14, at 13-14. Upon Baker's request, the trial court dismissed the jury for the day and recommenced deliberations on the following day.[4] *Id.* at 15-16.

---

[4] The trial court made only a brief statement to the jury regarding the length of deliberations: "Ladies and gentlemen, it's coming up on 4:30 p.m. You have now had this case in deliberation for less than eight hours. Nevertheless, it's been a long day." N.T., 3/4/14, at 15.

On March 5, 2014, at 11:52 a.m., the jury sent a second note to the trial court: "[W]e the jury after further deliberation came to a hopeless deadlock." Jury Note, 3/5/14, at 11:52 a.m. Baker moved for a mistrial or, alternatively, for the trial court to give a *Spencer*[5] charge. N.T., 3/5/14, at 4-5, 8. The trial court denied Baker's motion and did not give the *Spencer* charge, finding the charge premature after approximately ten hours of deliberation. *Id.* at 5-6. Instead, the trial court instructed the jury to resume its deliberations after a lunch break.[6] *Id.* at 7.

Later that same afternoon, at 3:05 p.m., the jury sent a third note to the trial court: "[W]e the jury have readdressed the issues as instructed

---

[5] A *Spencer* charge, guided by our Supreme Court's decision in *Commonwealth v. Spencer*, 275 A.2d 299 (Pa. 1971), instructs a deadlocked jury "to continue to deliberate, with an open mind to reconsideration of views, without giving up firmly held convictions." *Greer*, 951 A.2d at 361.

[6] The trial court briefly spoke to the jury regarding the length of deliberations:

> You, ladies and gentlemen, are well aware that deliberations commenced yesterday. It's now coming up on 12 noon. I'm counting the hours. In my view, you had this case now for some ten hours.
>
> Your lunch will be here in about one half hour.
>
> After due consideration, this Court has determined that it's probably best for all if you, ladies and gentlemen, have your lunch, after which you will be sufficiently refreshed that you can resume your deliberations.

N.T., 3/5/14, at 7.

and we still are at an impasse." Jury Note, 3/5/14, 3:05 p.m. Baker once again moved for a mistrial but did not request a ***Spencer*** charge, arguing that such an instruction would be inadequate and that dismissal of the jury was warranted. N.T., 3/5/14, at 9. The Commonwealth requested a ***Spencer*** charge. ***Id.***

The trial court denied the motion for mistrial, at which time Baker requested that the trial court "make inquiry as to no matter how many times [the jury is] asked to deliberate will they come to the same conclusion?" ***Id.*** at 10. The Commonwealth objected to this request, arguing that such an inquiry would inappropriately make counsel and the court parties to the deliberation. ***Id.*** Upon reconvening, the trial court posed a question to the foreperson of the jury: "In your judgment, is there a reasonable probability of returning a unanimous verdict on any of the charges lodged against this defendant?"[7] ***Id.*** at 12. The foreperson answered "[n]o." ***Id.*** at 10, 12. Based on that response, the trial court issued a ***Spencer*** charge.[8] ***Id.*** at

_____

[7] The trial court also asked the jury whether they required any additional or clarifying instructions on the law. N.T., 3/5/14, at 11.

[8] The trial court charged the jury as follows:

> You, ladies and gentlemen, must well appreciate the time, anxiety and expense involved in a re-trial of this matter. There are no other 12 people any more able to resolve the issues than you are, ladies and gentlemen.
>
> Please keep the following in mind: You realize, of course, that any verdict you return must [be] a unanimous verdict.

*(Footnote Continued Next Page)*

12-13. The trial court then dismissed the jury early, instructing them to resume deliberations the next morning. *Id.* at 14. On March 6, 2014, the jury resumed its deliberations.[9] 1925(a) Op. at 11. The jury reached its unanimous verdict the same day. N.T., 3/6/14, at 10-11.

_(Footnote Continued)_ ─────────────

> That you have a duty, ladies and gentlemen, to consult with one another and to deliberate with a view to reaching a unanimous agreement if it can be done without violence to individual judgment.
>
> That each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with his and her fellow jurors.
>
> That a juror should not hesitate to reexamine his or her own views and to change his or her opinion if convinced that it is erroneous, but no juror should surrender his or her honest convictions as to the weight or [e]ffect of the evidence simply because of the opinion o[f] his fellow jurors or for the mere purpose of returning a unanimous verdict.
>
> I am mindful that you, ladies and gentlemen, have been at this, excluding breaks and lunch, for two working days now. However, I want you, members of the jury, to keep the foregoing in mind because this Court must send you back to the jury deliberation room to give further consideration to both the evidence and the law to see if you can arrive at a unanimous verdict.
>
> Bear in mind that if the Court can be of any assistance to you in any way in this effort, I will be happy to oblige.

N.T., 3/5/14, at 13.

[9] On March 6, 2014, the jury asked the trial court to read the testimony of the victim's girlfriend. Jury Note, 3/6/14, 2:11 P.M. The parties agreed to allow the reading and the trial court read back the testimony. N.T., 3/6/14, at 4-8.

Baker argues that the trial court abused its discretion and coerced the jury into reaching a unanimous verdict. Appellant's Br. at 12. Baker focuses on the communications between the trial court and the jury, arguing that the jury's use of the term "hopeless deadlock" in the second note, along with the jury foreperson's indication to the trial court of no reasonable probability of returning a unanimous verdict in a colloquy after the third note, clearly expressed the jury's settled inability to reach a unanimous verdict. *Id.* Based on these communications, Baker argues that the jury's verdict was the product of coercion. *Id.* With due deference to the trial's court sound discretion in determining the appropriate length of jury deliberations in a particular case, ***Commonwealth v. Johnson***, 668 A.2d 97, 108 (Pa. 1995), we disagree.

In ***Commonwealth v. Cook***, this Court found that the trial court did not abuse its discretion by directing the jury to continue deliberating after it had twice indicated a deadlock. 557 A.2d 421, 425 (Pa.Super. 1989). This Court agreed with the trial court that the jury was not overworked, fatigued, or coerced where the jury deliberated on a robbery case involving 130 pages of testimony for 11 hours over two days, the jury was not sequestered, and the trial court granted breaks for meals and comfort. *Id.* In those circumstances, this Court found the trial court acted within its discretion when it issued two supplemental charges contemplated by ***Spencer*** and returned the jury to deliberations. *Id.* at 424-25. Similarly, in ***Commonwealth v. Jorden***, this Court found that the trial court did not

abuse its discretion by twice delivering *Spencer* charges when the jury indicated it was deadlocked after approximately five and eight hours of deliberation, following a four-day trial involving charges of rape, criminal conspiracy, and possessing instruments of crime. 482 A.2d 573, 576-78 (Pa.Super. 1984).[10]

Baker's trial lasted five days and the jury heard four days of testimony from 16 witnesses. At the time of the jury's second note, which described a "hopeless deadlock," the jury had deliberated for only ten hours. In response, the trial court instructed the jury to resume deliberations after a lunch break. When the jury, later that same afternoon, stated that it was "still . . . at an impasse," the trial court assessed the jury's ability to reach a decision and, based upon that assessment, issued a *Spencer* charge and returned the jury to its deliberations.

Baker's focus on the jury's use of the term "hopeless" to describe its deadlock, and on the jury foreperson's one-word answer to the trial court's inquiry, is unduly narrow. Considering the severity of the charges against Baker and the volume of testimony presented, the trial court appropriately returned the jury to its deliberations despite multiple indications of

---

[10] Like the appellant in *Jorden*, Baker "does not contest the content of the charges given by the trial court. Indeed, such a contention would be meritless because examination of both charges demonstrates that they compare favorabl[y] with the standards recommended by the supreme court in *Spencer*." *Jorden*, 482 A.2d at 578.

deadlock.[11]  As in **Cook** and **Jorden**, the trial court provided a non-coercive environment, here allowing the jury to take multiple breaks and twice sending it home early, the latter time so it could "start fresh" the next day. The trial court did not abuse its discretion.

Baker's other issue challenges the denial of a mistrial based on prosecutorial misconduct.  We apply the following standard when reviewing claims of prosecutorial misconduct:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion.  In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.  Not every inappropriate remark by a prosecutor constitutes reversible error.  A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context.  Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

---

[11] At the conclusion of its analysis of this issue, the trial court summarized its reasoning as follows:

> After a careful examination of the relevant factors, it is clear that this court properly denied [Baker]'s requests for a mistrial.  Moreover, given the complexity of the issues involved, the conflicting evidence presented, the nature of the crimes charged, the demeanor of the witnesses[,] and the attentiveness of the jury during trial, this court concluded that the length of time the jury deliberated did not coerce the jury verdict.  Thus, the jury properly weighed the evidence and rendered a verdict in accordance therewith.

1925(a) Op. at 17.

*Commonwealth v. Bedford*, 50 A.3d 707, 715-16 (Pa.Super. 2012) (internal citations and quotations omitted).

Baker's claim involves an exchange among a character witness, the prosecutor, and the trial court. Baker called a character witness to testify as to Baker's character for non-violence. N.T., 2/28/14, at 45-46. After testifying and then being dismissed by the trial court, the witness made an inappropriate comment to the jury and then confronted the prosecutor:

> After the prosecutor completed cross examination and [Baker's] character witness was dismissed by [the trial] court, the witness improperly addressed the jury and stated "He's a good kid." N.T. 2/28/2014 at 48. The witness then approached the prosecutor and confronted her as he walked off the witness stand. *Id.* In response to the witness's statement and conduct, the prosecutor addressing this court stated "I ask that that be stricken and the witness be admonished." *Id.* at 48. [The trial] court, having witnessed the inappropriate behavior of [Baker's] witness instructed the jury to disregard the remark before admonishing the witness outside of the jury's presence. *Id.* at 48-53.

1925(a) Op. at 13-15. After the admonishment, Baker moved for a mistrial based on the prosecutor's conduct, arguing that the prosecutor "yelled" the request at the trial court. N.T., 2/28/14, at 52. The trial court denied the motion, noting that "the only party that has been injured by [the witness's] conduct is the Commonwealth." *Id.*

Baker argues that the prosecutor's conduct in asking for the jury instruction and admonishment constituted prosecutorial misconduct, as "[t]he purpose of the prosecutor's comments in front of the jury was to

tarnish the credibility and potential impact of the character witness's testimony . . . because the cross-examination of the witness was not effective." Appellant's Br. at 15. Thus, according to Baker, the prosecutor's conduct "precluded the jury from returning a true verdict." *Id.* We disagree.

In response to allegedly prejudicial conduct by spectators, "[t]he trial court may implement any appropriate remedy requested, including offering a remedial instruction, removing the responsible spectator, or declaring a mistrial." *Commonwealth v. Sanchez*, 36 A.3d 24, 47 (Pa. 2011). The prosecutor requested a curative instruction and admonishment in response to the witness's inappropriate comment, and such a request for a curative instruction was appropriate. The trial court, based on its first-hand observation of the witness's conduct and the prosecutor's response, concluded that "[t]he prosecutor's comment was a reasonable and probable response to unwarranted hostile conduct." 1925(a) Op. at 15. Moreover, there is no support for Baker's claim that the prosecutor either created jury bias or prevented the jury from rendering a true verdict. *See Bedford*, 50 A.3d at 716 ("Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict."); *cf.* *Commonwealth v. Culver*, 51 A.3d 866 (Pa.Super. 2012) (finding prejudice where prosecutor waived his finger in appellant's face during

opening and closing statements, mischaracterized testimony during closing arguments, and misrepresented evidence before jury).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016