446 A.2d 605

**COMMONWEALTH of Pennsylvania**

v.

**Willie PORTER, Jr., Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Andrew GILLMER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed May 28, 1982.

John W. Packel, Assistant Public Defender, Philadelphia, for Porter, appellant (at No. 2729).

Thomas H. A. Gallagher, Philadelphia, for Gillmer, appellant (at No. 2814).

James Bowen Jordan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

WICKERSHAM, Judge:

These are appeals from judgments of sentence imposed after jury trials held before the Honorable Levy Anderson of the Court of Common Pleas of Philadelphia County. On April 5, 1978 appellant Gillmer was found guilty of two informations charging simple assault and aggravated assault and of criminal conspiracy. On October 12, 1978 Gillmer was sentenced to imprisonment for an aggregate term of not less than two years nor more than five years.

Appellant Porter was found guilty on two informations charging simple assault and aggravated assault and of criminal conspiracy. On October 12, 1978 Porter was sentenced to imprisonment for an aggregate term of not less than two years nor more than five years.

The essential facts in the instant case are as follows. On July 23, 1977, several men, including appellants Gillmer and Porter, entered the house of Jack Eleazer in Philadelphia. One of the men stabbed Mr. Eleazer in the chest; twenty-five dollars was taken from Mr. Eleazer after he was bound and gagged. Mr. Eleazer heard appellant Gillmer say that he planned to kill him.

Two of the intruders found Mrs. Eleazer on the second floor of the house. One of them, armed with an ice pick, told Mrs. Eleazer to be quiet or she would be killed. The man then struck Mrs. Eleazer, tied her up, and took fifteen dollars from her purse.

Mr. Eleazer freed himself, obtained a butcher knife, and chased appellant Gillmer upstairs. Mr. Eleazer then went to his living room and recovered a shotgun he had previously hidden there, and ordered appellant Gillmer, who was standing at the top of the steps, to come down. Gillmer refused to do so and threw an old rifle down at Mr. Eleazer. Mr. Eleazer then left the house to notify the police.

Appellants Gillmer and Porter then came to the door of the Eleazer house. Upon seeing Mr. Eleazer returning with his shotgun, appellant Porter told appellant Gillmer that the shotgun was unloaded as he had the shells for it in his pocket. Porter further suggested that they attack the assumedly defenseless Mr. Eleazer.

As appellant Gillmer came out of the house, Mr. Eleazer shot him. Appellant Porter and the other intruders then came out of the house. Porter took the shotgun from Mr. Eleazer and then attempted to help Gillmer escape.

A Philadelphia police officer subsequently found the wounded appellant Gillmer around the corner from the Eleazer house. Appellant Porter was found running away from the scene. Porter's clothes were soaked with blood. Mr. Eleazer identified both appellants Gillmer and Porter as two of his assailants to the police on the night of the crime and, subsequently, in court proceedings.

At trial, appellant Gillmer testified that he had gone to the Eleazer home to buy wine on the night in question and was robbed by three young men leaving the house. Gillmer maintained that Mr. Eleazer then came out of the house and fired a shotgun, wounding him.

Appellant Porter testified that he was walking towards appellant Gilmer's sister's home when he heard gunfire and saw Gillmer doubled over. After taking the shotgun and

two shells away from Mr. Eleazer, and helping Gillmer around the corner, Porter said he went to the scene of the crime and was chased by a crowd that had gathered. Porter was arrested shortly thereafter.

When called as a witness, Mrs. Eleazer testified that no wine had been sold from her house during 1977. Joel Moldovsky, Esquire, counsel for appellant Gillmer, then withdrew from the case in order to testify that Mrs. Eleazer had previously admitted to him that such sales had taken place during 1977. During Mr. Moldovsky's testimony the assistant district attorney prosecuting the case laughed at his testimony and then attempted to impeach him.

During closing argument, the prosecutor made a reference to the jurors' duty to the community. Defense counsel objected to such reference and was sustained by the trial judge, but specifically asked that no cautionary instruction be given.

During his charge on March 31, 1978, the trial judge instructed the jury that co-conspirators are liable for the natural and probable consequences of each others' acts committed during the conspiracy.

After several hours of deliberations on March 31 and April 3, 1978, the jury announced that they had reached a verdict. At the request of both defense counsel the jury was polled individually. All jurors polled announced that they found appellants Gillmer and Porter guilty on all counts until juror number nine announced that his verdict was not guilty on all counts. At that point the trial judge dropped the pencil he was holding in surprise. The trial judge then instructed the jury to continue its deliberations as it had not yet reached a verdict.

Jury deliberations continued into the next day, April 4, 1978, at which time the jury advised the trial judge that they were deadlocked. The trial judge then delivered a supplemental charge to the jury which urged them to consult with one another during their deliberations.

The jury continued its deliberations for approximately two hours on April 4, 1978 and for approximately two and one-half hours on April 5, 1978. The jury then returned with the verdicts of guilty which appellants Gillmer and Porter challenge in this appeal.

Appellants Gillmer and Porter phrase their first contention of error as:

Did not the lower court violate appellant's federal and state constitutional rights to trial by jury and coerce the jury into a verdict when the court: (A) exhibited what could reasonably have been viewed as disgust and disapproval when juror number nine announced a dissenting not guilty verdict and directed the jury to continue deliberations and (B) reinstructed the jury on its duties in deliberations for the third time—directing the jury to continue deliberating after the jury reported that it could not reach a unanimous verdict without violating the conscience of a juror(s)?

Briefs for Appellants at 2.

■ An unwise or irrelevant remark made by the judge during the course of a trial does not compel the granting of a new trial unless the remark is of such a nature or is delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair trial. *Commonwealth v. Nesbitt*, 276 Pa.Super. 1, 419 A.2d 64 (1980).

■ It cannot be reasonably said that the action of the trial judge in dropping a pencil in surprise at juror number nine's response during the initial jury poll deprived appellants Gillmer and Porter of a fair trial. As the trial court noted in denying post-verdict motions, there was no evidence that the jurors even noticed the judge drop his pencil. The jury continued deliberations for two more days after the pencil dropping incident. Such a lengthy period of deliberation after the incident indicates the verdict was the result of intense consideration rather than of coercion.

■ Appellants also contend that the trial judge erred in delivering the following instruction after the jury announced it was deadlocked on April 4, 1978:

You, as jurors, have a duty to consult with one another and to continue consulting with one another and to deliberate with a view to reaching a unanimous agreement, if it can be done without violence to individual judgment, that is to say, each juror must decide the case for himself or herself, but only after a careful consideration of the evidence with his and her fellow jurors, and in the course of such deliberations a juror shouldn't hesitate to re-examine his or her own views and to change his or her opinion if convinced that it is erroneous, but no juror should surrender his or her honest convictions as to the weight or effect of the evidence or as to the guilt or innocence of the defendants or either of them solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a unanimous verdict.

Record at 26–27.

■ This jury instruction is in conformance with that recommended in *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971) as a guideline for courts to follow when a jury is deadlocked. Whether to give a *Spencer* charge is matter for the exercise of discretion by the trial court which will not be reversed absent an abuse of that discretion. *Commonwealth v. Santiago*, 492 Pa. 297, 424 A.2d 870 (1981).

Instantly even after the allegedly coercive instruction was given to the jury, a verdict was not reached until the next day. We find no abuse of discretion by the trial court and no evidence of a coerced verdict.

Appellants' second contention of error is stated as:

Was not appellant deprived of a fair trial where the prosecutor expressed his personal opinion on the credibility of an important defense witness and requested a verdict based on emotion and sympathy in his closing address to the jury?

Brief for Appellants at 2.

■ Even where the language of the prosecuting attorney is intemperate, uncalled for and improper, unless its unavoidable effect would be to prejudice the jurors by forming

in their minds fixed bias and hostility towards the defendants, so that they could not weigh the evidence and render a true verdict, a new trial is not required. *Commonwealth v. Burton*, 491 Pa. 13, 417 A.2d 611 (1980).

■ Instantly, neither the prosecutor's laughter during the testimony of Joel Moldovsky, Esquire, his challenge to Moldovsky's credibility, nor his closing argument in which he made reference to the interests of the community in the case were so prejudicial as to cause the jury to be unable to weigh the evidence and render a true verdict. These were all minor incidents in a trial where testimony spanned four days.

Appellant Porter states his next contention of error as:

Was not trial counsel's representation of appellant ineffective because counsel did not object to: (1) the court's failure to instruct on the legal theory of justification in the use of force for the protection of other persons, where appellant admitted to an assault on the complainant and where such an instruction was necessary in connection with the instruction that a conspiracy could be inferred from the actions of the parties; (2) the court's failure to instruct that vicarious substantive liability for the acts of a co-conspirator does not apply to acts performed prior to a defendant's entry into the conspiracy; and (3) the court's charge that a conspirator is responsible for all substantive crimes committed by a co-conspirator which result from or are involved in a conspiracy?

Brief for Appellant at 2–3.

■ Defense counsel cannot be deemed ineffective if the particular course he chose to pursue had some reasonable basis designed to effectuate his client's interests. Defense counsel cannot be found ineffective for failing to assert meritless claims. *Commonwealth v. Burton, supra.*

■ Instantly, appellant Porter's counsel was not ineffective for failing to request that the jury be instructed on the theory of justification in the use of force to protect another. At trial, Porter maintained he was not involved in any criminal activity against the Eleazers on the night in ques-

tion. While appellant Porter did admit to knocking a shotgun from Mr. Eleazer's hands after the shooting of appellant Gillmer, he was not charged with any crime for that particular action as the trial judge made clear in his jury charge. Record at 153–55. It would be frivolous to request an instruction for a crime that was not charged.

Appellant Porter's claim that his trial counsel was ineffective for failing to request jury instructions detailing the criminal liability resulting from an entry into an on-going conspiracy is also meritless. It was appellant Porter's defense at trial that he had not entered into any conspiracy nor committed any crime at all. If the jury accepted appellant Porter's version of events it would have returned a verdict of not guilty. If Porter's trial counsel had requested, and been granted, the jury charge suggested by appellate counsel, he would have invited the jury to find that Porter entered a conspiracy that was already underway and, accordingly, to find him guilty of some of the charges in direct contradiction of his testimony that he was completely innocent. Appellant Porter's trial counsel had a reasonable basis for not requesting the instruction: he hoped the jury would believe his client and find him not guilty.

Appellant Porter's claim that his trial counsel was ineffective for failing to object to the charge concerning vicarious liability in a conspiracy is also meritless. In charging the jury the trial judge stated:

When the existence of a conspiracy has been established, the law imposes upon that co-conspirator full responsibility for the natural and probable consequences of the acts committed by his fellow conspirator or conspirators.

That rule applies even to an act which is a constituent of the natural and probable execution of the conspiracy, even though such act is not specifically contemplated by the parties.

Record at 157–58.

During deliberations the jury requested additional instructions and the trial judge charged:

When the existence of a conspiracy has been established the law imposes upon a co-conspirator full responsibility for the natural and probable consequences of the acts committed by his fellow conspirators or conspirator; that rule applies even to an act which is a constituent of the natural and probable execution of the conspiracy, even though such act is not specifically contemplated by the parties.

Let me give you an illustration, although this illustration doesn't apply to this case, but merely for illustrative purposes.

For instance, if a conspirator conspires with others or with another in an attempt to commit a robbery or burglary, and during the course of the robbery or burglary a person is killed in the perpetration of those crimes, each conspirator would also be responsible for the murder that results therefrom.

Now, in this case the Commonwealth has charged that a criminal conspiracy was entered into by each of these defendants, with another person or persons, among themselves and with another person or persons, depending on whether or not there were three people who entered the house, for the purpose of committing robbery, or four; the testimony is not altogether clear.

Now, if you find that either of the defendants did conspire with the other persons or with each other, as I have just defined it for you, and you find this beyond a reasonable doubt, then you would find him guilty of criminal conspiracy; otherwise, you must find him not guilty.

Record at 10–11.

On April 4, 1978, the jurors indicated they had several questions concerning the criminal liability flowing from a conspiracy, which are reprinted below:

One, if one defendant is guilty of criminal conspiracy is he then guilty of all the other charges against him or any other co-conspirators?

Two, can he be guilty of criminal conspiracy, but not of any of the other charges?

Three, is it possible in this case to come to a verdict as to one defendant and not on the other?

. . . .

Five, does a person by his very presence, without participation, give his tacit consent, thus making him a fellow co-conspirator?

Record at 18–19.

The trial court answered the questions as follows:

First Question. . . .

The answer is: yes, he would be guilty of all crimes resulting from the conspiracy, whether committed by him or a co-conspirators

Two . . . He would be guilty of all the crimes involved in the conspiracy, committed by him or any co-conspirator, unless he withdrew from the conspiracy prior to the commission of any of the crimes involved in the conspiracy.

. . . .

Number three . . . the answer is yes.

. . . .

Five. Does a person, by very presence, without participation, give his tacit consent, thus making him a fellow conspirator?

The answer is no.

Mere presence alone is not sufficient to imply guilt of conspiracy or any other crime, but presence with the other circumstances involving a conspiracy, on which I have already instructed you, would make him guilty, if, in fact, he were part of the conspiracy, even though he did not personally participate in any of the acts involved in the conspiracy.

In other words, if there was conspiracy to commit this crime, the crime of robbery. Do you understand that? All right.

So, the answer to the question as written is no, but you have to consider that in terms of the definition of responsibility for a conspiracy, and I think I gave you an example yesterday.

Record at 19–21.

In charging the jury the trial court is free to use its own form of expression; the only issue is whether the area of law is adequately, accurately, and clearly presented to the jury. In evaluating a challenge to the correctness of a jury charge, the charge must be read and considered in its entirety and it is the general effect of the charge that controls. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977).

The unlawful agreement among conspirators renders each liable for the acts any of them commit in furtherance of the conspiracy. *Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979). A person is legally accountable for the conduct of another when he is so made accountable by the law defining the offense. 18 Pa.C.S. § 306(b). A person is guilty of conspiracy to commit a crime if with the intent of promoting or facilitating its commission he agrees with another person or persons that they will engage in conduct which constitutes such crime or agrees to aid such other person or persons in the commission of such crime. 18 Pa.C.S. § 903(a).

Instantly, the general effect of the trial judge's instructions concerning vicarious liability in a conspiracy is that conspirators are liable for the natural and probable effects of crimes committed by each other in the course of the conspiracy. These instructions constitute a correct statement of the law and are, accordingly, unobjectionable. Appellant Porter's counsel is, therefore, not ineffective for failing to object to them.

Appellant Gillmer frames his final contention of error as: That the appellant's federal and state constitutional rights to due process were violated by the court permitting and

274

abetting substitution of trial counsel during the trial which is a critical stage in any criminal action.

Brief for Appellant at 2.

The issue refers to the substitution of Thomas Gallagher, Esquire, as counsel for appellant Gillmer after Joel Moldovsky, Esquire, Gillmer's original trial counsel, took the stand to rebut the testimony of Mrs. Eleazer concerning liquor sales at the Eleazer house.

■ The fact that a defendant's attorney takes the stand during the trial is not cause for a mistrial unless actual prejudice can be shown. *Commonwealth v. Floyd*, 494 Pa. 537, 431 A.2d 984 (1981).

■ Appellant Gillmer assented to the change in counsel during a colloquy the trial court held when Mr. Moldovsky informed the court of his intention to take the stand. Record at 69–71. Instantly, no actual prejudice to appellant Gillmer has been demonstrated to have occurred as a result of the change of counsel, nor does our review of the record reveal any such prejudice. Appellant Gillmer's contention is without merit.

Judgments of sentence affirmed.