J-S51041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RAHEEM COLLINS | : | |
| Appellant | : | No. 2522 EDA 2016 |

Appeal from the PCRA Order June 3, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0511331-2006

BEFORE: BOWES, SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED SEPTEMBER 08, 2017**

Appellant, Raheem Collins, appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. We affirm, but we remand this matter to the PCRA court with instructions to correct the written judgment of sentence to indicate that Appellant was, in fact, convicted of the felony offense at 18 Pa.C.S.A. § 6106, Firearms Not to be Carried Without a License, and not the misdemeanor offense at 18 Pa.C.S.A. § 6108, Carrying Firearms on Public Street/Property in Philadelphia.

This Court has previously recited the pertinent factual history of the case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

In the early evening of January 28, 2006, a Pontiac Bonneville driven by Benjamin Wright and owned by his nephew was in the 2900 block of Westmont Street in North Philadelphia. Benjamin Wright and his wife, Lahronda Wright, had taken their ten-year-old daughter, Aneena Wright, their six-year-old grandson, Jabar Wright, two young granddaughters and two young cousins to the movies that afternoon. They dropped off the two young cousins and were returning to the Westmont Street residence of Lahronda Wright's mother to drop off the two young granddaughters.

Benjamin Wright parked the car in front of the home of Lahronda Wright's mother. Benjamin Wright remained in the car with Jabar while Lahronda Wright accompanied by Aneena took the two young granddaughters into the house. At that time, Lahronda Wright observed Co-Defendant Chriss Powell in the vicinity. After a few moments, Lahronda Wright and Aneena returned to the car. At this point, Powell was walking or "creeping," as it was described, up the block wearing a "hoodie." Appellant went by the Pontiac Bonneville where Benjamin Wright, Lahronda Wright, Aneena, and Jabar were seated and looked into the car. Appellant began to jog and then ran into the residence at 2916 Westmont Street, described as a "hangout house."

At this time, there was a car on Westmont Street positioned in front of Benjamin Wright's Pontiac Bonneville. The driver of that car appeared to be talking on a cell phone. The driver seemed in some measure intentionally to be delaying the passage of the Pontiac Bonneville. That car ultimately pulled off and the Pontiac Bonneville containing Benjamin Wright, Lahronda Wright, Aneena, and Jabar proceeded to the intersection of 29th and Westmont.

Appellant Raheem Collins, Co-Defendant Donte Rollins, Co-Defendant Chriss Powell, and Co-Defendant Kevin Norris were standing on the corner. Lahronda Wright considered the men friends. She had known Raheem Collins for over eighteen years, Donte Rollins for over thirteen years, Chriss Powell for over five years, and Kevin Norris for five years. She also knew they "hung out" together. There was no one else on the street. Benjamin Wright had on ongoing dispute with all four men stemming from threats or attempts made on the life of Benjamin Wright's nephew and on Benjamin Wright himself. There had

been a confrontation between Benjamin Wright and all four men approximately one month before and difficulties continued even after that confrontation. The confrontation consisted of Benjamin Wright speaking directly to all four men about the problem. Benjamin Wright told all four men that he was not going to allow them to kill his nephew or do anything to him or his family. Additional dispute stemmed from the fact that the residents of the 32nd Street neighborhood where Benjamin Wright resided had some history of differences with residents of the 29th Street or 30th Street neighborhood where these four men resided.

Suddenly, shots were fired at the Pontiac Bonneville. The shots came from the direction where Appellant, Rollins, Powell, and Norris were standing. Appellant was seen reaching into his pants as if to pull something out as the shots were fired.

Lahronda Wright screamed to those in the car to get down. Benjamin Wright and Aneena Wright both testified that she also screamed to those in the car that "Donte and Mook" were shooting. "Donte" referred to Rollins. "Mook" referred to Appellant. As the shots were ringing out the four men never ducked for cover and never ran for cover. Because Jabar was shot, Benjamin Wright sped off to nearby Temple University Hospital.

At trial, Lahronda Wright testified that she did not see a gun and did not actually see anyone shooting. However, at the hospital, when Lahronda Wright met with police, [she] exclaimed to Officer Quianna Wharton that Donte and Raheem shot her grandson. Captain Anthony Washington testified that he was at the hospital on the evening in question and that he "obtained information in reference to what happened." N.T. 11/21/07 at 7. Captain Washington stated that "[t]he information I received consisted of a male by the name of Donte, and also another male, which was his cousin, identified or named Raheem, along with two other males had shot at the vehicle several times while they were in the 2900 block of Westmont Street." *Id*. Also at the hospital, Lahronda Wright told Officer Christine McGinley that Donte and Raheem shot her grandson. It is the case that Lahronda Wright testified at trial that she did not see a gun and did not actually see anyone shooting.

Jabar was shot once in the back of the neck. Injuries from the wound have left him paralyzed from the neck down. No one else was injured in the shooting.

Cartridge casings found at the scene evidenced that at least eight shots were fired from at least two guns; there was one 9 millimeter gun for certain, one .380 caliber gun for certain, and the physical evidence yielded the possibility that a third gun, also a .380 caliber, was involved. No weapon was recovered.

Appellant was tried jointly by a jury with Rollins, Powell, and Norris. The jury convicted Appellant of attempted homicide as to Jabar Wright, four counts of aggravated assault, conspiracy, and firearms not to be carried without a license. Rollins and Powell were likewise convicted. Norris was completely acquitted.

Appellant was sentenced to consecutive statutory maximum sentences for each offense as follows: 20 to 40 years on the attempted homicide; 10 to 20 years for each of three aggravated assaults (the aggravated assault for Jabar Wright was determined to merge with the attempted homicide); 10 to 20 years for conspiracy; and 2 ½ to 5 years for the firearms offense. The aggregate sentence was 62 ½ to 125 years.

On July 1, 2008, new counsel was appointed for appeal. On July 3, 2008, more than 10 days after imposition of sentence, new counsel filed post-sentence motions raising a weight of the evidence claim and a discretionary aspects of sentencing claim. The post-sentence motions were immediately denied that same day.

Direct appeal was taken by notice of appeal filed July 23, 2008. [Appellant raised issues asserting prosecutorial misconduct, a weight of the evidence claim, and a discretionary aspects of sentencing claim.]

*Commonwealth v. Collins*, No. 2240 EDA 2008, unpublished

memorandum at 1-6 (Pa.Super. filed October 18, 2010).

By this Court's order and memorandum decision of October 18, 2010,

we affirmed judgment of sentence. Appellant filed no petition for allowance

of appeal (PAA), but he secured reinstatement of his right to file a PAA *nunc pro tunc* through a PCRA petition. On August 26, 2014, however, the Pennsylvania Supreme Court denied *allocatur*.

On September 9, 2014, Appellant filed a counseled PCRA petition. On June 29, 2015, he attempted, *pro se*, to add several issues to his counseled petition. On November 2, 2015, the court conducted a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) and permitted Appellant to proceed *pro se* as he desired. Subsequently, Appellant filed a *pro se* amended PCRA petition claiming that trial counsel ineffectively failed to object to the lower court's instructions to a jury that first indicated it was deadlocked after one day's deliberations but had since resumed discussing the case. The amended petition also asserted that the court lacked subject matter jurisdiction for supposed defects in the bills of information and that he was wrongly convicted and sentenced on an uncharged firearms offense.

On May 6, 2016, the PCRA issued notice of its intent to dismiss Appellant's claims under Pa.R.Crim.P. 907. Appellant filed a response on May 26, 2016, but the PCRA court dismissed his petition on June 3, 2016. This timely appeal followed.

Appellant raises the following questions for our review:

> **1. WHETHER THE PCRA COURT ERRED WHEN THE COURT DETERMINED THAT DEFENSE COUNSEL DID NOT PROVIDE DEFICIENT PERFORMANCE FOR FAILING TO REGISTER AN OBJECTION TO THE TRIAL COURT'S FAILURE TO COMPLY WITH RULE 7.05 (MANDATORY INSTRUCTIONS TO THE JURORS) WHEREAS THE**

**INSTRUCTIONS CHARGED WAS [SIC] DEFICIENT AND VIOLATED THE DEFENDANT'S RIGHTS TO DUE PROCESS OF LAW; AND THAT THIS CLAIM IS MERITLESS?**

**2. WHETHER THE PCRA COURT ERRED WHEN THE COURT DETERMINED THAT DEFENSE COUNSEL DID NOT FAIL TO MOTION THE COURT TO QUASH THE INFORMATION WHEREAS THREE OF THE CHARGING BILLS OF INFORMATION FAILED TO DESCEND TO THE PARTICULARS[;] FAILED TO STATE THE SPECIES; FAILED TO IDENTIFY A VICTIM; AND WAS NOT SIGNED BY THE COMMONWEALTH; THE CHARGING BILLS OF INFORMATION WAS DEFECTIVE AND VAGUE; DEFENSE COUNSEL FAILED TO MOTION THE COURT TO QUASH THE BILLS OF INFORMATION; AND WHETHER THE PCRA COURT ERRED IN DETERMINING THAT THIS ISSUE IS MERITLESS?**

**3. WHETHER THE PCRA COURT ERRED WHEN THE COURT DETERMINED THAT DEFENSE COUNSEL DID NOT PROVIDE DEFICIENT PERFORMANCE WHEREAS THE CHARGING BILL OF INFORMATION DID NOT CHARGE AN OFFENSE OF FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE; THE COURT TRIED, CONVICTED, AND SENTENCED THE DEFENDANT FOR AN OFFENSE THAT HE WAS NOT CHARGED WITH ; AND DEFENSE COUNSEL PROVIDED DEFICIENT PERFORMANCE FOR ALLOWING THE DEFENDANT TO BE TRIED AND CONVICTED FOR AN OFFENSE THAT THE CHARGING BILL OF INFORMATION DID NOT CONTAIN WHICH VIOLATED THE DEFENDANT'S RIGHTS TO DUE PROCESS OF LAW; AND THAT THIS CLAIM IS MERITLESS?**

Appellant's brief at 3.

Initially, we outline our standard of review of a PCRA order.

Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error. ***Commonwealth v. Marshall***, 596 Pa. 587, 947 A.2d 714, 719 (2008). The PCRA court's credibility determinations, when supported by the record, are binding on this Court. ***Commonwealth v. Johnson***, 600 Pa. 329, 966

A.2d 523, 532, 539 (2009). However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions. ***Commonwealth v. Rios***, 591 Pa. 583, 920 A.2d 790, 810 (2007).

***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011). ***Accord Commonwealth v. Bardo***, 105 A.3d 678, 685 (Pa. 2014) ("If supported by the record, the PCRA court's credibility determinations and factual findings are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.").

Appellant's averments all relate to his insistence that he received ineffective assistance from trial counsel. In this respect, we observe:

Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, the court must examine whether counsel's decisions had any reasonable basis. ... To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. Failure to establish any prong of [this test, which is known as the] ***Strickland/Pierce*** test will defeat an ineffectiveness claim.

***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015) (citations, quotation marks and footnote omitted). Failure to meet any prong of this test will result in the claim failing. ***Commonwealth v. Stewart***, 84 A.3d 701 (Pa.Super. 2013).

In Appellant's first issue, he contends that trial counsel ineffectively failed to object when the trial court decided not to give a ***Spencer***[1] charge to the jury after the foreperson had indicated after the first day of deliberations that it was deadlocked. The record does not support Appellant's claim.

Specifically, the jury began deliberations on Friday, November 30, 2007 at 12:43 p.m. N.T., 11/30/07, at 60-61. On the following Monday, the jury delivered a note to the trial court indicating it was deadlocked after one vote at 10:30 a.m. and two more votes at 1:15 p.m. N.T., 12/3/07, at 18-19. The court convened a meeting with counsel to inform them of the jury's message and the court's intention to give a ***Spencer*** charge on Tuesday morning before the jury resumes deliberations. Defense counsel agreed with the court's plan, stating "I ask for a standard ***Spencer*** charge tomorrow morning." N.T. at 19.

Next morning, the court brought the jury into the courtroom to discuss the status of its deliberations. The following exchange took place:

> **COURT:** I received a note yesterday, dated 12/3/07, I will read it. It says, "We are deadlocked," exclamation point, one vote at 10:30 A.M. second vote at 1:15 P.M. still no decision,

---

[1] A ***Spencer*** charge, guided by our Supreme Court's decision in ***Commonwealth v. Spencer***, 275 A.2d 299 (Pa. 1971), instructs a deadlocked jury "to continue to deliberate, with an open mind to reconsideration of views, without giving up firmly held convictions." ***Commonwealth v. Greer***, 951 A.2d 346, 361 (Pa. 2008).

exclamation point, Joan Anderson Ball. Ms. Ball, you are the foreperson, did I read the note correctly?

**FOREPERSON:** Yes. That was of yesterday.

**COURT:** Are you telling me you are no longer in this mode?

**FOREPERSON:** We're still discussing it.

**COURT:** You are still discussing the case?

**FOREPERSON:** Yes.

**COURT:** If you are still discussing the case, I release you. You go back and continue to discuss the case.

N.T., 12/4/07, at 6.

After the jury exited, the court explained that it was prepared to read a **Spencer** charge to the jury until the foreperson said it no longer considered itself deadlocked and had resumed deliberations. N.T. at 6. The court noted that, in its experience, where a jury moves forward from a claimed state of deadlock and resumes deliberations, a **Spencer** charge "may plant in their mind their ability not to reach a verdict." N.T. at 7. The jury returned a verdict of guilty later that day.

Whether to give a **Spencer** charge is a matter for the exercise of discretion by the trial court, which will not be reversed absent an abuse of that discretion. **Commonwealth v. Porter**, 446 A.2d 605, 608 (1982) (citing **Commonwealth v. Santiago**, 424 A.2d 870 (Pa. 1981). Here, we discern no arguable merit to Appellant's "failure to object" ineffectiveness claim where there is no evidence that the court's decision to refrain from issuing a **Spencer** charge resulted in a coerced verdict.

As noted above, a *Spencer* charge applies when a jury is deadlocked. *Greer*, *supra*. *See also Porter*, *supra* (recognizing the *Spencer* instruction serves "as a "guideline for courts to follow when a jury is deadlocked."). While the jury indicated it was deadlocked after just one day of deliberations, it had unilaterally resumed deliberations by the following morning and denied being deadlocked when the trial court asked the foreperson for an update. Both the relatively short time that the jury had deliberated up to that point and the foreperson's report that the jury was, once again, discussing the case, therefore, supported the court's election to allow the jury to continue in its deliberations without a *Spencer* instruction. Accordingly, counsel cannot be deemed ineffective for failing to renew his earlier request for a *Spencer* charge when the jury had announced it was no longer deadlocked but was, instead, freely discussing the case again.

In Appellant's second claim, Appellant asserts that trial counsel ineffectively failed to seek quashal of the bills of information because they failed to state the specifics of the crime, identify a victim, or bear a signature by a Commonwealth agent. The Commonwealth responds that Appellant has waived this claim by failing to present it first for the PCRA court's review. The only challenge Appellant's amended PCRA petition levelled against his charging documents was one to the trial court's subject matter jurisdiction, but such a challenge never included a related ineffective assistance of counsel claim.

"It is well-settled that issues not raised in a PCRA petition cannot be considered on appeal." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super. 2011) (quotation marks and citations omitted)); 42 Pa.C.S.A. § 9544(b). **See also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Our review of the record substantiates the Commonwealth's waiver position. Therefore, we deem waived Appellant's allegation of trial counsel's ineffectiveness.

In Appellant's final issue, he argues that trial counsel ineffectively failed to object when the trial court amended the criminal information on the day of trial to reinstate the charge of Firearms Not to be Carried Without a License, 18 Pa.C.S. § 6106, after the charge was, apparently, inadvertently discharged during arraignment. As part of this argument, however, Appellant segues into an assertion that the PCRA court rejected his claim upon the erroneous conclusion that Appellant was never actually charged and convicted under Section 6106 but was, instead, charged, convicted, and sentenced under 18 Pa.C.S. § 6108, Carrying Firearms on Public Street/Property in Philadelphia.

To this latter argument, the Commonwealth agrees that the PCRA court misconstrued the record, as Appellant was clearly charged with and convicted of committing a felony VUFA offense at Section 6106 but, as the result of a clerical error, was inadvertently sentenced under the guidelines applicable to a misdemeanor VUFA violation at Section 6108. As such, the Commonwealth posits that Appellant cannot prove he was prejudiced by

receiving a lesser sentence than he would have received under the felony conviction under Section 6106. As for the clerical error appearing on Appellant's sentencing order, the Commonwealth proposes that this Court modify the sentencing order, without disturbing the existing sentence, simply to reflect the correct firearms conviction.

A defendant is due relief when the trial court exercises its discretionary power to allow amendment of the information only if the amendment prejudices the defendant. *Commonwealth v. Veon*, 109 A.3d 754, 768 (Pa.Super. 2015). Factors for a court to consider in determining the existence of prejudice include:

> (1)whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id*.

Here, Appellant provides no argument that the amendment prejudiced him. Instead, he simply recounts the sequence of events that led to the trial court amending the bill of information to include the Section 6106 VUFA violation that originally appeared on Appellant's criminal complaint filed on January 29, 2006. Appellant then cites to the trial transcript where the trial court both confirmed that Appellant had been charged under Section 6106

and instructed the jury on the elements necessary to prove the offense, and where the jury convicted him of violating Section 6106. **See** Appellant's brief at 11-13.

Nowhere in Appellant's brief does he explain on what grounds trial counsel should have objected, nor does our review of the record in light of the six factors to be considered when confronted with an amended bill of information reveal any prejudice here. The record shows that the criminal complaint against Appellant charged him with a Section 6106 offense arising out of the same factual scenario that was central to his criminal trial, and Appellant does not allege the amendment caused unfair surprise or necessitated a change in trial strategy. Therefore, having failed to establish prejudice from the amendment, Appellant cannot prevail on his ineffectiveness claim herein. **See Commonwealth v. Witmayer**, 144 A.3d 939 (Pa.Super. 2016) (finding no prejudice from amendment of information on day of trial where amendment involved no new facts and had no effect on the prepared defense).

Finally, as noted above, the Commonwealth asks this Court to modify what it deems a clerical error with Appellant's sentencing order to reflect the jury's verdict of guilty on the VUFA felony violation at Section 6106, without altering the existing firearms sentence. We agree that correction of the written judgment is appropriate where a clerical error has created a discrepancy between it and the offense for which Appellant was, in fact, convicted.

The power to modify a judgment of sentence to amend records, to correct mistakes of court officers or counsel's inadvertencies is inherent in our court system, even after the thirty-day time limit set forth in 42 Pa.C.S.A. § 5505, has expired. ***See Commonwealth v. Young***, 695 A.2d 414, 420 (Pa.Super. 1997) (correcting clerical error which had permitted judgment of sentence to indicate that defendant was sentenced on incorrect subsection of indecent assault statute). Thus, we remand this matter to the PCRA court so that it may rectify the clerical error which appears on the face of Appellant's written judgment of sentence by setting forth the correct section of the VUFA statute, Section 6106, in place of the erroneous entry for Section 6108. ***Cf., Commonwealth v. Simmons***, 336 A.2d 624 (Pa.Super. 1975) (where judgment was incorrectly entered for receiving stolen property and unlawful taking, Superior Court could correct judgments).

Order is AFFIRMED. Case remanded to the PCRA court for proceedings consistent with this decision. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2017

- 14 -