J-S84008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDREW RICHARDSON, | |
| Appellant | No. 2707 EDA 2017 |

Appeal from the Judgment of Sentence Entered July 24, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005490-2014

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED APRIL 08, 2019**

Appellant, Andrew Richardson, appeals from the judgment of sentence of an aggregate term of 12½-25 years' incarceration, imposed following his conviction for involuntary deviate sexual intercourse with a child (IDSIC),[1] unlawful contact with a minor (UCM),[2] and corruption of minors (COM).[3] Additionally, Appellant's counsel John Belli, Esq., seeks to withdraw his representation of Appellant pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After

---

[1] 18 Pa.C.S. § 3123(b).

[2] 18 Pa.C.S. § 6318.

[3] 18 Pa.C.S. § 6301.

careful review, we deny Attorney Belli's motion to withdraw, and remand for further proceedings consistent with this memorandum.

In this case, the trial court failed to summarize the facts adduced at trial in its Pa.R.A.P. 1925(a) opinion.[4] As Appellant has not objected to the Commonwealth's recitation of those facts, and as that recitation largely dovetails with Appellant's summary, we adopt the Commonwealth's account as our own, as follows:

> In the summer of 2009, M.M. was eleven years old. On some weekends, she would visit her sister, K.J., who lived in an apartment on Gratz Street in Philadelphia. K.J. shared the apartment with [Appellant], her twenty-nine-year-old boyfriend. During one of those visits, M.M. fell asleep on the couch in the living room[.] []N.T. 7/12/16, 23-28, 126[.]
>
> During the middle of the night, M.M. woke up to find [Appellant] performing oral sex on her. She recognized him because she could feel his beard on her vagina as he inserted his tongue. [Appellant] stood up and moved to the middle of the floor. His boxer shorts were pulled down to his knees. M.M. remained silent as he masturbated in front of her and then pulled up his shorts. [Appellant] told M.M. not to say anything to K.J. and retreated to the couple's bedroom[. *Id.* at] 28-32[.]
>
> Approximately two days later, M.M. again slept over at K.J.'s apartment. When she woke up, she found K.J.'s friends sleeping in the living room with her. [Appellant] came out of the bedroom and told M.M. to come to the kitchen. She complied, and [Appellant] tried to pull her pants down. M.M. held her pants up

---

[4] This Court would strongly prefer that the trial court provide a summary of the facts adduced at trial in its Rule 1925(a) opinion, even when Appellant's counsel files a statement pursuant to Rule 1925(c)(4) ("In a criminal case, counsel may file of record and serve on the judge a statement of intent to file an **Anders** … brief *in lieu* of filing a Statement."). Even in the context of **Anders**, it is essential to our review to have an accurate accounting of the factual basis for a conviction in order to determine whether all potential appellate issues are truly frivolous.

and told him to get off. She went back to the living room, and her sister's friends woke up[. *Id.* at] 33-34, 85-88[.]

M.M. did not disclose [Appellant]'s attacks. Several years later, K.J. and [Appellant] broke up. In December of 2013, however, K.J. decided to restart their relationship and asked for M.M.'s help in contacting [Appellant]. Acting on K.J.'s request to reinitiate communications, the newly teenaged M.M. began exchanging messages with [Appellant] over Facebook. M.M. also hoped that their communications would cause him to admit to the previous assaults[. *Id.* at] 34-35, 50, 77, 99[.]

[Appellant] and K.J. began seeing each other again. Meanwhile, he maintained a Facebook exchange with M.M. Among the topics they discussed was M.M.'s age. She stated that she was fifteen years old and would be sixteen in six months. On February 7, 2014, regarding M.M. and her sister, [Appellant] wrote, "I miss y'all two the most, with you on top[.]" [*Id.* at] 46-47, 52, 62-64, 123[.]

The next day, he wrote that he was "going to [come] climb through [M.M.'s] window, give [her] a hug and a kiss and then leave." M.M. replied, "LOL, nasty. You going to do that to [K.J.], right?" [Appellant] answered, "No, you." [Appellant] also asked M.M. what she was doing. She replied, "Chillin in my bed, watching TV." [Appellant] next messaged, "I need video chat." M.M. responded, "With who?" [Appellant] answered, "Who I'm talking to[.] You said, [you] in bed." M.M. wrote, "Yeah, I am. Perve, LOL." [Appellant] answered, "LOL. Only for you, babygirl[.]" [*Id.* at] 46-48[.]

On February 9, 2014, when [Appellant] again tried to video chat with M.M., she refused to respond[.] [*Id.* at] 49-51[].

On February 11, 2014, [Appellant] asked when M.M. would visit him. She replied, "When you and [K.J.] see each other." [Appellant] messaged, "She don't be trying to come see me. Plus I want to see you." He messaged that he wanted to "keep [his] promise that [he] made to [her]." He asked, "What did I say about your age?" M.M. answered that he said he was "going to take my cookie when [I'm] older." At trial, M.M. testified that by "cookie," she meant her vagina[.] [*Id.* at] 52-53, 56-57[.]

During this same exchange, [Appellant] messaged that he "miss[ed] eating [M.M.'s] cookie." She replied, "[K.J.]'s too, right?" [Appellant] answered, "No, yours. The way it tastes is

- 3 -

crazy." M.M. messaged, "LOL, nasty man." [Appellant] replied, "Naw, I'm not nasty, I just like what I taste[d]." He continued, "I want to taste it again when you come stay the weekend with me." M.M. wrote back that she was a "good girl," to which [Appellant] replied, "[W]e all got a little bad in us. Let me help you bring it out. You going to be mine when you get older, anyway. Matter of fact, you can be mine now." M.M. answered that he "should try somebody [K.J.'s] age." [Appellant] wrote, "I want you, but I have to talk to [K.J.] to talk to you." M.M. responded, "You want [K.J.] and she will never be forgotten in your heart, so you [should have stopped] being stupid and man up if you [did not] want to lose something." [Appellant] answered, "That's why I'm talking to you now[, stop] playing and say you will be mine. You know, when I come over [to K.J.'s] house, and [you are there,] we going to do us[.]" [*Id.* at] 57-60[.]

The Facebook exchanges between [Appellant] and M.M. continued until K.J. discovered the conversation on his Facebook account. The next day, K.J. spoke with M.M. and subsequently took her to the Special Victims Unit of the Philadelphia Police Department[.] [*Id.* at] 61-64, 111-12, 116, 123[.]

On April 1, 2014, [Appellant] was arrested. He waived his *Miranda*[5] rights and gave a statement denying that he made sexual advances towards M.M. He asserted that his use of the word "cookie" referred to baked goods[.] [*Id.* at] 125, 134-35, 139, 141, 148-49[.]

Between July 11 and 15, 2016, [Appellant] was tried by [a] jury before Judge Cunningham. [Appellant] testified, contradicting his earlier statement by claiming that he and M.M. performed oral sex on each other in January of 2014, but denying that he had performed oral sex on the victim in 2009. [*Id.* at] 176-83[.]

Commonwealth's Brief at 2-6 (footnotes omitted).

The jury convicted Appellant of IDSIC, UCM, and COM. On July 24, 2017, the trial court sentenced Appellant to consecutive terms of 10-20 years' incarceration for UCM, 2½-5 years' incarceration for COM, and 10 years'

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

probation for IDSIC. Appellant filed a timely notice of appeal. On October 18, 2017, this Court permitted Appellant's trial counsel to withdraw, and current **_Anders_** counsel, Attorney Belli, was appointed to represent him on January 12, 2018. Appellant then filed a timely Pa.R.A.P. 1925(c)(4) statement through Attorney Belli.

Attorney Belli now presents the following question for our review: "Whether there are any issues of arguable merit that could be raised on direct appeal presently before this court and whether the appeal is wholly frivolous?" Appellant's Brief at 3. However, in the argument section of the **_Anders_** Brief filed by Attorney Belli, he indicates that he reviewed the following claims that Appellant intended to assert on appeal:

> 1.) Trial counsel was ine[f]fective for failing to litigate Appellant's *pro se* pre-trial motions.
>
> 2.) Trial counsel was ineffective for not investigating and calling as witnesses persons Appellant advised counsel about prior to trial.
>
> 3.) Trial counsel was ineffective for not obtaining and introducing as evidence Appellant's state prison records, which would have established that Appellant was incarcerated when the incident allegedly occurred.
>
> 4.) Trial counsel was ineffective for not impeaching the complainant and her sister with prior inconsistent statements and Facebook postings and for not introducing messages saved in Appellant's cell phone that would have impeached the credibility of the above witnesses.
>
> …

5.) The trial court committed an abuse of discretion by not taking a partial verdict and [by] giving the jury a **Spencer**[6] charge.

Appellant's Brief at 10-12 (unnecessary capitalization omitted).

Attorney Belli concludes that Appellant's issues are frivolous, and that he has no other, non-frivolous issues that counsel could pursue herein. Accordingly,

this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief."

---

[6] **See Commonwealth v. Spencer**, 275 A.2d 299 (Pa. 1971). A **Spencer** charge arises in the context of deadlocked jury; it is "a non-coercive charge" that "instruct[s] the jurors to be true to their convictions, but to reconsider their original views[.]" **Commonwealth v. Greer**, 951 A.2d 346, 378 (Pa. 2008).

> *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In this case, Attorney Belli's *Anders* Brief facially complies with the above-stated technical requirements for an *Anders* Brief. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Belli also states in his petition to withdraw that he has supplied Appellant with a copy of his *Anders* Brief. Additionally, he attached a letter directed to Appellant to his petition to withdraw, in which he informed Appellant of the rights enumerated in *Nischan*. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

The first four issues that Appellant seeks to raise on direct appeal concern claims that his trial counsel rendered ineffective assistance of counsel. As noted by Attorney Belli, in **Commonwealth v. Grant**, 813 A.2d 726, 738 (Pa. 2002), our Supreme Court "h[e]ld that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." Subsequently, in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed the general rule in **Grant**, and only recognized an exception, delegated to the discretion of a trial court, where there is both a showing of good cause, and where the defendant seeking relief for trial counsel's alleged ineffectiveness expressly waives "his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the [Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546]." **Commonwealth v. Burno**, 94 A.3d 956, 970 (Pa. 2014).

The criteria for invoking **Holmes**' exception to **Grant** are not present in the instant case. Accordingly, it would be frivolous for Appellant to assert his ineffective assistance of trial counsel claims on direct review. **See Commonwealth v. Tukhi**, 149 A.3d 881, 889 (Pa. Super. 2016) (holding that, where the **Holmes**' exception to **Grant** is not present, ineffectiveness claims presented on direct appeal are frivolous, and must be deferred until

collateral review).  Thus, we agree with Attorney Belli it would be frivolous for Appellant to present these ineffectiveness claims on direct appeal.

As to the fifth claim reviewed by Attorney Belli,

> [A]ppellant asserts that the trial court erred by failing to take a partial verdict after the jury indicated that it was deadlocked on one of the charges and that further deliberations would be fruitless.  He further asserts that the trial court compounded the error by giving the jury a **Spencer** charge. [**See**] N.T., 7/14/16, 58-62[.]

Appellant's Brief at 12.

Attorney Belli asserts this claim would be frivolous for the following reasons:

> Whether or not to give a **Spencer** charge, rather than declare a mistrial because a jury announces that it is deadlocked, rests within the sound discretion of the trial court, whose decision thereon may not be reversed absent an abuse of that discretion. **Commonwealth v. Santiago**, 424 A.2d 870 (Pa. 1981); **Commonwealth v. Porter**, 446 A.2d 605, 608 (Pa. Super. 1982).  The law is clear that mistrials should not be lightly granted and the Pennsylvania Supreme Court has affirmed that a trial court is required to declare a mistrial only when the incident complained of "is of such a nature as to deny the defendant a fair trial."  **Commonwealth v. Johnson**, 668 A.2d 97, 103 (Pa. 1995)….  As such, "[t]he decision to grant or deny a motion for mistrial is [also] within the sound discretion of the trial court." **Commonwealth v. Sattazahn**, 631 A.2d 597, 607 (Pa. Super. 1993)….
>
> The trial court did not commit an abuse of discretion by not taking a partial verdict and by directing the jury to continue its deliberations following the giving of a **Spencer** charge.  The duration of jury deliberations is a matter for the sound discretion of the trial judge, whose decision to require a jury to continue deliberations will only be reversed upon a finding that the court committed an abuse of discretion.  **See Johnson**, 668 A.2d at 108; **Commonwealth v. Monte**, 329 A.2d 836 (Pa. 1974). Factors that have to be considered include the nature and complexity of the charges and issues involved, the amount of

testimony to consider and the length of trial, the solemnity of the proceedings, and indications from the jury on the possibility of reaching a verdict. *Johnson*, *supra*; *Commonwealth v. Marion*, 981 A.2d 230, 235 (Pa. Super. 2009)….

Instantly, the jury had been deliberating only for about four hours at most when it advised the trial court that it had reached a verdict on some of the charges but could not do so on another. The trial was not lengthy and the issues and charges the jury had to consider were not complicated given that their resolution depended on issues of credibility. Finally, the jury did not indicate that it was "hopelessly deadlocked." *Johnson*, 668 A.2d at 109 (considering it significant that jury did not indicate that it was hopelessly deadlocked in upholding trial court's exercise of discretion in ordering jury to continue deliberating). Given the foregoing, a meritorious issue arguing that the trial court abused its discretion by directing the jury to continue with deliberations would be frivolous.

Appellant's Brief at 13-15 (footnote omitted).

We agree with Attorney Belli to the extent that we would find it difficult under existing precedent to determine that the trial court abused its discretion when it instructed the jury, which had only deliberated for a few hours, to resume deliberations in accordance with a *Spencer* charge. However, it is perplexing as to why Attorney Belli considers this issue to be frivolous. A frivolous issue is not one that is simply *likely* to be deemed meritless on appeal due to adverse case law. Rather, "[a] frivolous claim is a claim clearly and palpably without merit; it is a claim which presents no debatable question." *Commonwealth v. Gains*, 556 A.2d 870, 874 (Pa. Super. 1989).

Nevertheless, the issue is frivolous for a reason not set forth in Attorney Belli's *Anders* Brief. As noted by the Commonwealth, Appellant "failed to preserve a challenge to the court's *Spencer* charge because he failed to object

- 10 -

after the court granted the Commonwealth's request for the instruction." Commonwealth's Brief at 9-10. As our review of the record indicates, although Appellant requested a partial verdict, he did not object to the issuance of a **Spencer** charge as an alternative form of relief. **See** N.T., 7/14/16, at 57-58. Furthermore, after it read the instruction to the jury, the trial court asked, "Does anyone have anything additional with regard to this?" **Id.** at 62. Appellant's counsel responded, "No, Your Honor." **Id.** Accordingly, Appellant waived his claim that the trial court should have accepted a partial verdict instead of issuing a **Spencer** charge. Thus, it would be frivolous for Attorney Belli to raise that claim on direct appeal.

Finally, we must address Appellant's *pro se* response to Attorney Belli's **Anders** brief and petition to withdraw. Appellant first complains that the **Anders** brief contains false statements concerning the factual record of this case. **See** Appellant's *Pro Se* Response to Counsel's **Anders** Brief (hereinafter, "Response to **Anders** Brief"), 7/16/18, at 1-2 (unnumbered pages). However, Appellant fails to identify how these alleged errors pertain to issues reviewed by Attorney Belli, or how Appellant's version of the facts would give rise to any non-frivolous claims on direct appeal.

Second, Appellant argues that Attorney Belli should have raised an issue concerning the "[i]dentification of the accused." Response to **Anders** Brief at 3. Appellant asserts that the victim only identified him by his skin color at the preliminary hearing, and by his beard at trial. However, Appellant does not dispute that the victim, M.M., knew him, and the evidence produced at his

trial clearly demonstrates that she did. M.M. testified that she knew it was Appellant because she "felt his beard, he was the only person in the apartment with us, and I saw his skin color." N.T., 7/12/16, at 30. M.M. also testified that, immediately following the assault, the perpetrator said to her, "Don't tell [K.J.]," and then he entered K.J.'s room. *Id.* at 32. Moreover, Appellant texted M.M. and referenced the assault when he said that he "miss[ed] eating [M.M.'s] cookie." *Id.* at 57. Thus, at trial, M.M. identified Appellant by his beard and skin color, in addition to circumstantial evidence that 1) demonstrated that Appellant was the only other person in K.J.'s apartment, 2) that the perpetrator knew K.J's name, 3) the fact that the perpetrator returned to K.J.'s bedroom, which is where she had seen Appellant go earlier in the evening, and 4) Appellant referenced the incident during the subsequent text conversations he had with M.M.

Therefore, the only plausible legal claim concerning Appellant's identity in this case concerns the credibility of M.M.'s testimony. Such a claim goes to the weight of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa. Super. 2003) ("[S]ufficiency of the evidence review … does not include an assessment of the credibility of the testimony offered by the Commonwealth. Such a claim is more properly characterized as a weight of the evidence challenge.") (citation omitted). Here, however, Appellant did not preserve a weight-of-the-evidence claim in a post-sentence motion, in a pre-sentence motion, or orally at or before sentencing.

> Pennsylvania Rule of Criminal Procedure 607 provides, in pertinent part, that a claim that the verdict was against the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006) (citing Pa.R.Crim.P. [] 607, Comment; *Commonwealth v. Little*, 879 A.2d 293 (Pa. Super. 2005)).

*Commonwealth v. Barnhart*, 933 A.2d 1061, 1066 (Pa. Super. 2007). Accordingly, Appellant waived a challenge to the weight of the evidence and, therefore, it would be frivolous for Attorney Belli to raise a waived claim.

Third, Appellant notes a discrepancy between the criminal information and the offense listed on his sentencing order. Our review of the record reveals significant discrepancies in this regard. The Commonwealth charged Appellant under two provisions of the IDSI statute in the criminal information. *See* Criminal Information, 5/22/14, at 1. He was charged with a violation of Section 3123(a)(1) at count 1, and Section 3123(a)(7) at count 4. Subsequently, Count 4 was *nolle prossed* prior to trial. *See* Trial Disposition and Dismissal Form (hereinafter "TDDF"), 7/19/16, at 1. However, the verdict slip indicates that the jury found Appellant guilty of "Involuntary Sexual Deviate Intercourse with a [c]hild under 13[,]" indicating a violation under Section 3123(b). *See* Verdict Report, 7/15/16, at 1 (single page). Moreover, the TDDF indicates that Appellant was convicted at count 1 of a violation of Section 3123(b), where, as noted above, count 1 was listed as a violation of Section 3123(a)(1) in the criminal information. In the sentencing order,

Appellant was sentenced for a violation of Section 3123(a)(7) at count 4, whereas the trial court indicated in the TDDF that count 4 had been *nolle prossed* prior to trial. These discrepancies, which potentially indicate the presence of non-frivolous claims that could have been raised on direct appeal,[7] were not addressed in Attorney Belli's **Anders** Brief, nor were they addressed in the trial court's Rule 1925(a) opinion.

Next, Appellant argues that the Attorney Belli omitted claims concerning inconsistent and/or allegedly perjured testimony by M.M. As noted above, claims concerning the credibility of witnesses go to the weight of the evidence, yet no weight-of-the-evidence claim was preserved for our review. Accordingly, it would be frivolous for Attorney Belli to raise such a claim on direct appeal.

Appellant also contends that "the trial court never gave" him "a choice of a mistrial" when the jury indicated that it was unable to reach a verdict. Response to **Anders** Brief at 5-6. This is not a cognizable legal claim. Counsel must request a mistrial; Appellant is not entitled to have a trial court judge offer him a legal remedy when counsel is silent. However, if Appellant is asserting that the trial court should have granted a mistrial, that claim was not preserved in the trial court because defense counsel did not request it. Accordingly, Appellant could only raise such a claim by asserting that his trial

---

[7] We decline to formulate specific claims based on this record; however, these discrepancies potentially indicate, *inter alia*, the presence of due process and/or illegal sentencing concerns.

- 14 -

counsel was ineffective for failing to request a mistrial. As noted above, such claims must wait for collateral review. Thus, it would have been frivolous for Attorney Belli to raise it on direct appeal.

Finally, Appellant asserts that Attorney Belli "never told" him "in letter or in person anything about withdrawing from" his case. *Id.* at 6-7. However, in the letters Appellant provided, written from Attorney Belli to Appellant and attached to Appellant's Response to *Anders* Brief, it is clear that Attorney Belli informed Appellant that he did not believe there were any potentially meritorious issues to raise on direct appeal on Appellant's behalf. Moreover, as noted above, Attorney Belli complied with all of the technical requirements for filing an *Anders* Brief. Attorney Belli's subsequent letter informing Appellant about the *Anders* Brief and his intent to withdraw as appellate counsel was the proper means by which to inform Appellant about his intent to withdraw.

Nevertheless, because this Court has identified at least one, *potentially* meritorious claim—due to the significant inconsistencies in the record surrounding Appellant's IDSIC conviction—we are compelled to deny Attorney Belli's motion to withdraw. Consequently, we remand to the trial court and instruct the court to issue a new order directing Appellant to file a Rule 1925(b) statement within 21 days of the filing date of this memorandum. We also instruct the trial court to 1) carefully consider any request by Appellant for the appointment of new counsel, or 2) appoint new counsel *sua sponte*, at the court's discretion. If new counsel is appointed, that attorney should be

afforded an adequate amount of time to review the record and communicate with Appellant should he request an extension of the 1925(b) deadline issued by the trial court.[8]   We direct the trial court to issue its Rule 1925(a) opinion within 30 days of the date that Appellant ultimately files his Rule 1925(b) statement.

Motion to withdraw **denied**.  Case **remanded**.  Jurisdiction **retained**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/19

---

[8] We note that Appellant is not limited to raising issues involving the inconsistencies this Court identified with respect to his IDSIC conviction. However, Appellant is precluded from raising issues already identified as frivolous in this memorandum.